No. 96-373

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


DARLEEN H. DOIG,

Plaintiff and Respondent,

v.

GORDON D. CASCADDAN and JOAN L. CASCADDAN,
husband and wife,

Defendants and Appellants.


APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey Sherlock, Judge presiding.


COUNSEL OF RECORD:

For Appellants:

Gregory W. Duncan; Harrison, Loendorf,
Poston & Duncan; Helena, Montana

For Respondent:

Thomas A. Budewitz; Attorney at Law;
Helena, Montana


Submitted on Briefs: January 9, 1997

Decided: March 25, 1997
Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The respondent, Darleen H. Doig, filed a complaint for declaratory judgment in the District Court for the First Judicial District in Broadwater County. The appellants, Gordon D. Cascaddan and Joan L. Cascaddan, counterclaimed and sought damages for various alleged breaches of contract. Following a trial by jury, the District Court entered judgment for Cascaddans in the amount of $1,000, and awarded attorney fees to Doig as the prevailing party. Cascaddans appeal. We affirm the judgment of the District Court.

The issues on appeal are:

1. Did the District Court err when it denied Cascaddans' motion to allow extrinsic evidence to impeach their own witness?

2. Did the District Court err when it granted Doig's motion for a directed verdict and dismissed Cascaddans' claim pertaining to water rights?

3. Did the District Court err when it held that Doig is the prevailing party and, on that basis, awarded her attorney fees?

FACTUAL BACKGROUND

Doig was the owner of real property in Broadwater County. In 1992, she entered into a buy-sell agreement with Cascaddans. The terms of the agreement specify that, at closing, Cascaddans would receive a warranty deed secured by a mortgage, and that the remaining balance due would be paid according to the terms of a promissory note.

Furthermore, the agreement contains: (1) a provision which required Doig to clean up the property; and (2) a liquidated penalty clause which would apply if Doig failed to comply with the clean-up provision. The agreement also states:

If either party hereto finds it necessary to institute an action at law, to employ an attorney to protect or enforce any of the rights created hereunder . . . the prevailing party shall be entitled to recover from the other party a reasonable attorney's fee . . . .

Closing took place on August 14, 1992, and pursuant to the terms of the agreement, Cascaddans took possession of the property on August 1, 1993.

Cascaddans subsequently complained to Doig that she had not complied with the terms of their agreement. On March 3, 1994, they

sent her a letter which stated:

> Because of your failure to respond, the Cascaddans have decided to reduce their remaining principal balance due under their note to you by the sum of $20,000 . . . .

In response, Doig filed a complaint for declaratory judgment in which she requested the District Court to enter:

> [A] judgment that [Doig] is not in breach of any of the terms of the contract between the parties and further declaring that [Cascaddans'] obligations to make all payments provided for in said contract remain in full force and effect.

Accompanying her complaint was an offer of judgment in the amount of $2,500.

Cascaddans counterclaimed and sought approximately $20,000 in damages. Specifically, they claimed that Doig breached the contract when she: (1) removed shop walls, shelving, and certain three inch and two inch irrigation pipe; (2) created a fence problem; and (3) failed to remove certain items from the property. Furthermore, based on her alleged failure to clean up the property, Cascaddans sought to collect a monetary penalty pursuant to the contract's liquidated penalty clause.

Subsequently, Doig sent Cascaddans a check in the amount of $906 for replacement of the missing shop wall. After Cascaddans returned the check to her, she filed another offer of judgment in the amount of $3,406.

On August 3, 1995, the District Court granted Doig's motion for summary judgment on Cascaddans' claim for damages pursuant to the liquidated penalty clause. Trial by jury was scheduled to commence on December 11, 1995; however, on December 1, 1995, Cascaddans retained new counsel and moved for a continuance. They also filed motions to add a third-party claim and to amend their counterclaim to allege that Doig breached the contract when she failed to convey certain water rights. The District Court denied the motion to add a third-party claim, but granted the motion to amend the counterclaim. Cascaddans' amended counterclaim sought damages in the amount of approximately $40,000. Trial by jury began on February 26, 1996.

At trial, Cascaddans contended that Doig breached the contract when she failed to convey water rights. As part of their case, they sought to establish the value of those water rights by eliciting the following testimony from Donald Shearer:

> Q. And was it -- did Doig ever offer to sell those water rights to you?

> A. Yes.

Q. And did he offer to sell you the second and the fourth water right?

A. I think the second right.

Q. Was the fourth right associated with that at all?

A. I don't believe so, but I'm not sure at this point.

Q. What did he offer to sell you that right for?

MR. BUDWEITZ [Doig's counsel]: Object now because what he's asking, apparently attempting to do is establish a value of the second water rights, which he got, they got it.

THE COURT: If I'm not mistaken, and I'll ask Mr. Shearer, the second water right that you and Mr. Doig were discussing, that is the water right that the Cascaddans currently have, is it not?

A. I think so.

THE COURT: Okay. Sustained.

After Cascaddans completed the presentation of their evidence, they moved the District Court to allow them to use extrinsic evidence--the testimony of Darryl Strombaugh--to impeach Shearer's trial testimony. The District Court denied their motion.

At the conclusion of all the evidence, Doig moved for a directed verdict regarding several of Cascaddans' counterclaims. The District Court concluded that, with regard to the water rights, the improper location of the fence, and the missing pieces of two-inch pipe, Cascaddans had not provided sufficient evidence to establish their damages. Accordingly, it granted Doig's motion for a directed verdict with regard to those counterclaims.

As a result of the directed verdict, the damage claims which were submitted to the jury were for the total amount of $17,240. The jury returned a verdict in favor of Cascaddans in the amount of $1,000.

After trial, both parties moved for attorney fees. The District Court determined that Doig is the "prevailing party" and, on that basis, awarded her attorney fees.

### ISSUE 1

Did the District Court err when it denied Cascaddans' motion to allow extrinsic evidence to impeach their own witness?

When we review a district court's evidentiary ruling, the standard of review is whether the district court abused its

discretion.  Glacier National Bank v. Challinor (1992), 253 Mont. 412, 415, 833 P.2d 1046, 1048.

At trial, Cascaddans asserted that Doig breached the contract when she failed to convey certain water rights.  In support of their claim, Cascaddans presented Donald Shearer who testified as follows with regard to the value of the disputed water rights:

Q.    And was it -- did Doig ever offer to sell those water rights to you?

A.    Yes.

Q.    And did he offer to sell you the second and the fourth water right?

A.    I think the second right.

Q.    Was the fourth right associated with that at all?

A.    I don't believe so, but I'm not sure at this point.

After Cascaddans completed the presentation of their evidence and rested their case, they asserted, outside the presence of the jury, that Shearer's trial testimony contradicted prior statements he made to their attorney.  They claimed that previously Shearer stated that Doig offered to sell him two water rights (both the "second" and the "fourth" rights), and not just the one Cascaddans had already received.  They further claimed that a third party, Darryl Strombaugh, heard Shearer's prior inconsistent statements and that he could testify for impeachment purposes.  On that basis, they moved the District Court to allow them to use extrinsic evidence to impeach Shearer's testimony.  The District Court denied the motion.

On appeal, Cascaddans contend that the District Court erred when it denied their motion to use extrinsic evidence (the testimony of Darryl Strombaugh) to impeach Donald Shearer. Specifically, they assert that, pursuant to Rule 607, M.R.Evid., they have the right to impeach any witness, including their own.

Cascaddans' interpretation of Rule 607, M.R.Evid., is correct. However, their argument on appeal overlooks the equally important Rule 613 which states, in relevant part:

(b)  Extrinsic evidence of prior inconsistent statement of witness.  Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon . . . .

Rule 613(b), M.R.Evid. (emphasis added); see also State v. Pease (1986), 222 Mont. 455, 462, 724 P.2d 153, 157.

In this case, Cascaddans failed to comply with Rule 613(b), M.R.Evid. They did not question Shearer regarding his alleged prior inconsistent statement, and provided him no opportunity to explain or deny that it was made. In fact, their motion to introduce extrinsic evidence for impeachment purposes was not made until after Shearer had been dismissed as a witness, and after they had completed the presentation of their evidence and rested their case.

Therefore, pursuant to Rule 613(b), M.R.Evid., Darryl Strombaugh's impeachment testimony was not admissible. Accordingly, we hold that the District Court did not err when it denied Cascaddans' motion to impeach Shearer by offering that testimony.

ISSUE 2

Did the District Court err when it granted Doig's motion for a directed verdict and dismissed Cascaddans' claim pertaining to water rights?

A motion for a directed verdict is governed by Rule 50, M.R.Civ.P., which states, in relevant part:

> (a) Judgment as a matter of law.
> (1) If during a trial by jury a party has been fully heard with respect to an issue and there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue, the court may grant a motion for judgment as a matter of law against that party on any claim, counterclaim, cross-claim, or third party claim that cannot under the controlling law be maintained without a favorable finding on that issue.

Rule 50(a)(1), M.R.Civ.P. Furthermore, we have previously held that a motion for a directed verdict may be granted only when it appears as a matter of law that the nonmoving party could not recover upon any view of the evidence, including the legitimate inferences to be drawn therefrom. Wilkerson v. School Dist. #15, Glacier County (1985), 216 Mont. 203, 211, 700 P.2d 617, 622.

Cascaddans' amended counterclaim asserted that Doig breached the contract when she failed to convey certain water rights. At the close of all the evidence, Doig moved the District Court for a directed verdict with regard to that claim. The District Court granted Doig's motion based on its conclusion that:

> [T]he problem is, there's not one iota of evidence here as to the amount of damages. So even if the jury doesn't figure it out and I have to determine it, there's nothing for me to figure. I have to use the evidence that you've presented. There's no evidence at all what these [water rights] are worth.

On appeal, Cascaddans contend that there was, in fact, sufficient evidence from which the jury could have established a value for the disputed water rights.

Section 27-1-311, MCA, provides the measure of damages for breach of contract:

> For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract.

Section 27-1-311, MCA (emphasis added).

After a thorough review of the record, we conclude that Cascaddans failed to offer any evidence of damages with regard to that part of their counterclaim which alleged that Doig failed to convey water rights. Therefore, Cascaddans' alleged damages were "not clearly ascertainable in both their nature and origin" and, concomitantly, there was no basis upon which the jury could calculate damages or even determine if there were, in fact, any damages.

Accordingly, we hold that the District Court did not err when it granted Doig's motion for a directed verdict and dismissed Cascaddans' water rights counterclaim.

ISSUE 3

Did the District Court err when it held that Doig is the prevailing party and, on that basis, awarded her attorney fees?

The parties' contract specifically addresses the issue of attorney fees and expressly states:

> If either party hereto finds it necessary to institute an action at law, to employ an attorney to protect or enforce any of the rights created hereunder . . . the prevailing party shall be entitled to recover from the other party a reasonable attorney's fee . . . .

(Emphasis added.) With regard to the recovery of attorney fees, the parties' agreement is clear and the District Court is bound by its terms. In re Marriage of Caras (1994), 263 Mont. 377, 385, 868 P.2d 615, 620.

After trial, both parties moved for attorney fees. In its order determining the prevailing party, the District Court concluded:

> Upon consideration of all of the circumstances, the Court has determined that . . . Doig is the prevailing party and is therefore entitled to recover a "reasonable

attorney's fee . . . ."

We must, therefore, determine whether the District Court erred when it concluded that "Doig is the prevailing party." When we review a district court's conclusions of law, the standard of review is whether those conclusions are correct. Carbon County v. Union Reserve Coal Co. (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

On appeal, Cascaddans contend that they are, in fact, the "prevailing party" and therefore, that the District Court erred when it awarded attorney fees to Doig. Specifically, they make the following argument: (1) the jury found that Doig breached the contract and that Cascaddans suffered damages in the amount of $1,000; (2) the jury did not award any damages to Doig, and therefore; (3) Cascaddans received a "net judgment" of $1,000. On that basis, Cascaddans assert that they are the "prevailing party" and are entitled to attorney fees.

It is undisputed that Cascaddans are the only party who received a money judgment. However, as we have previously held, that fact is not dispositive:

> No one factor should be considered in determining the prevailing party for the purpose of attorney fees. The party that is awarded a money judgment in a lawsuit is not necessarily the successful or prevailing party. However, this Court agrees with those jurisdictions that have found the award of money to be an important item to consider when deciding who, in fact, did prevail.

E.C.A. Env. Mgmt. Serv., Inc. v. Toenyes (1984), 208 Mont. 336, 345, 679 P.2d 213, 217-18.

Therefore, while the District Court was required to consider the Cascaddans' receipt of a $1,000 judgment, that is not the only fact that warrants consideration. After a review of the record, we conclude that the following facts were also necessarily taken into consideration and support the District Court's conclusion that Doig is the prevailing party: (1) the litigation was precipitated by Cascaddans' March 3, 1994, letter to Doig in which they threatened to withhold future payments in the amount of $20,000; (2) on two separate occasions, Doig filed an offer of judgment in an amount greater than the amount which Cascaddans ultimately recovered; (3) Cascaddans' initial counterclaim sought approximately $20,000 in damages; (4) the District Court granted summary judgment in favor of Doig and dismissed that part of Cascaddans' counterclaim based on the liquidated penalty clause; (5) Cascaddans' amended counterclaim, which sought approximately $40,000 in damages, added allegations that Doig breached the contract when she failed to convey water rights; (6) the District Court granted Doig's motion for a directed verdict pertaining to Cascaddans' two-inch pipe,

fence relocation, and water rights counterclaims; (7) as a result of the directed verdict, Cascaddans' damage claims were reduced to approximately $17,000; and (9) ultimately, the jury verdict was for only $1,000.

Accordingly, we hold that, based on the totality of circumstances and facts in this case, the District Court did not err when it concluded that Doig is the prevailing party and, on that basis, awarded her attorney fees.

The judgment of the District Court is affirmed.

/S/   TERRY N. TRIEWEILER

We Concur:

/S/   J. A.   TURNAGE
/S/   JAMES C. NELSON
/S/   JIM REGNIER
/S/   KARLA M. GRAY