No. 99-092

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 273

296 Mont. 494

989 P.2d 831

ARCADIA FINANCIAL, LTD.,

Plaintiff/Respondent

and Cross-Appellant

v.

PRESTIGE TOYOTA,

Defendant/Appellant

and Cross-Respondent.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Russell C. Fagg, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Peter T. Stanley, Attorney at Law; Billings, Montana

For Respondent:

David M. Wagner, Crowley, Haughey, Hanson, Toole & Dietrich;

Billings, Montana

Submitted on Briefs: July 22, 1999

Decided: November 16, 1999

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

**¶ Arcadia Financial, Ltd., ("Arcadia") filed an action in the Thirteenth Judicial District Court, Yellowstone County, against Prestige Toyota ("Prestige") to recover damages for breach of contract. After a bench trial, the District Court issued its Findings of Fact and Conclusions of Law and awarded Arcadia the principal amount owing on the contract as well as interest, costs and attorney fees. Prestige appeals and Arcadia cross-appeals. We affirm the District Court's award.**

¶ **This appeal raises the following issues:**

¶ **1. Whether the District Court erred in concluding that according to the terms of an assignment provision in a retail installment contract Prestige guaranteed payment of all sums due when it failed to deliver a valid certificate of title within the time required?**

¶ **2. Whether the District Court erred in awarding all the sums due under a retail installment contract to Arcadia?**

¶ **3. Whether the District Court erred in awarding attorney fees and costs to Arcadia?**

**FACTUAL BACKGROUND¶ Prestige is a new and used car dealer located in Billings, Montana. Arcadia is a Minnesota corporation that purchases retail installment contracts from automobile dealers after dealers have entered into such contracts with buyers. On June 13, 1995, Prestige entered into a Master Dealer Agreement with Arcadia providing for the sale of retail installment contracts to Arcadia.**

¶ **On December 29, 1995, Prestige entered into a retail installment contract with James B. Knight ("Knight Contract"). Mr. Knight purchased a 1994 Hyundai Excel for $7195. The retail installment contract contains a provision assigning the contract to Arcadia. The Knight Contract permits four assignment options: (1) "with full recourse and guarantee," (2) "with 90 day recourse," (3) "without recourse," or (4) "under the terms of a Master Dealer Agreement."**

¶ **On December 29, 1995, the same day that Mr. Knight purchased the vehicle, Prestige assigned the Knight contract to Arcadia "without recourse." The assignment provision states that "[i]f this assignment is made without recourse, it is understood that only the warranties above apply." One of the above warranties in the assignment provision of the Knight Contract provides:**

(c) That at the time of making the contract [Prestige] has a valid certificate of title . . . which has been sent so as to be received within 10 days by the appropriate officials for noting [Arcadia's] interest on the certificate . . . .

This warranty ensured that Arcadia had a perfected security interest in the vehicle sold to Knight.

¶ **Prestige admitted that it did not send a valid certificate of title to the appropriate officials so as to be received within ten days of the sale as required by the terms of the contract. The Knight Contract states that Prestige unconditionally guarantees the full performance of the terms of the contract in the event that it breaches "any of the foregoing warranties."**

¶ **Mr. Knight made approximately three monthly payments toward the purchase of the vehicle. Mr. Knight subsequently defaulted on the contract and filed for Chapter 7 Bankruptcy protection. At the time of Mr. Knight's filing, he owed $7232.29 in principal under the terms of the installment contract. The bankruptcy trustee voided Arcadia's lien on the Hyundai Excel and characterized the Knight Contract as a voidable preferential transfer because Prestige had not filed the title application noting Arcadia's interest on the certificate within the time permitted under the Bankruptcy Code. On August 1, 1996, the Bankruptcy Court approved the sale of Mr. Knight's vehicle for $2200.**

¶ **Arcadia demanded that Prestige repurchase the Knight Contract in a letter dated March 10, 1997. Prestige refused. On July 3, 1997, Arcadia filed a complaint alleging a breach of the Master Dealer Agreement and the Knight Contract and seeking damages in the amount of the remaining principal owing on the Knight Contract as well as interest, costs, and attorney fees. Prestige admitted breaching the warranty contained in the Knight Contract that required Prestige to file an application for title within ten days of assignment. However, Prestige claimed it was not required to repurchase the contract and asserted that Arcadia's damages for not having a perfected security interest in the automobile were limited to the amount the bankruptcy trustee received on its sale. Arcadia moved for summary judgment and Prestige moved for partial summary judgment on the issue of damages. In an order dated May 27, 1998, the District Court denied both motions.**

¶ **A bench trial was held on July 8, 1998. On July 20, 1998, the District Court issued its Findings of Fact and Conclusions of Law, awarding Arcadia the principal amount due and owing on the Knight Contract, as well as interest, attorney fees, and costs. Prestige appeals from the District Court's Findings of Fact and Conclusions of Law as well as the court's denial of its motion for partial summary judgment. Arcadia**

cross-appeals the District Court's denial of its motion for summary judgment in order to preserve the issue.

STANDARD OF REVIEW

¶ **The construction and interpretation of written agreements is a question of law.** *See, e.g., In re Estate of Hill* (1997), 281 Mont. 142, 145, 931 P.2d 1320, 1323 (citations omitted). **Likewise, it is a question of law whether ambiguity exists in a written agreement.** *Estate of Hill*, 281 Mont. at 146, 931 P.2d at 1323. **We review a district court's conclusions of law to determine whether the court's interpretation is correct.** *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

**DISCUSSION¶ 1. Whether the District Court erred in concluding that according to the terms of an assignment provision in a retail installment contract Prestige guaranteed payment of all sums due when it failed to deliver a valid certificate of title within the time required?**

¶ **Where the language of the contract is clear and unambiguous and susceptible to only one interpretation, the duty of the court is to apply the language as written.** *Carelli v. Hall* (1996), 279 Mont. 202, 209, 926 P.2d 756, 761.

¶ **The assignment provision of the Knight Contract states, in relevant part:**

**Assignment and Warranty Terms.** . . . This assignment is made in consideration of the following warranties: . . . (c) That at the time of making of the contract [Prestige] has a valid certificate of title or other valid and exclusive evidence of ownership to the vehicle sold . . . which has been sent so as to be received within 10 days by the appropriate officials for noting [Arcadia's] interest on the certificate . . . .

If this assignment is made without recourse, it is understood that only the warranties above apply. . . . [Prestige] agrees that in the event of the breach of *any of the foregoing warranties* the waiver of recourse against [Prestige] shall be abrogated and [Prestige] unconditionally guarantees the full performance of all the terms and conditions of the contract by Buyer therein and in accordance with the terms of the guaranty endorsement set forth above . . . .

(Emphasis added.) The guarantee endorsement states that "[i]f Buyer defaults for any reason . . . [Prestige] agrees to repurchase the contract for the amount then outstanding."

¶ **The Knight Contract contains four assignment options. Prestige initialed the space provided in the Knight Contract which indicated that the contract was assigned to Arcadia "without recourse." Prestige argues that, according to the first sentence of the second paragraph of the assignment provision, "only the warranties" of the first paragraph apply to nonrecourse assignments. Prestige contends that these warranties are not referred to by the contract language "any of the foregoing warranties" in the second paragraph. Prestige argues that, although it did breach its warranty to deliver a valid certificate of title within ten days of sale, it did not breach any of the "foregoing" warranties and therefore it did not unconditionally guarantee performance.**

¶ **We agree with the District Court's conclusion that the Knight Contract governs this dispute. The Knight Contract was not assigned under the terms of the Master Dealer Agreement. Furthermore, the Knight Contract specifically states that if the assignment is made without recourse only the warranties of the first paragraph of its assignment provision apply.**

¶ **The assignment provision of the Knight Contract clearly states that Prestige agreed to guarantee full performance of the Knight Contract under three conditions: (1) if assignment was made "with full recourse" and Mr. Knight defaulted, (2) if assignment was made with "90-day recourse" and Arcadia delivered Mr. Knight's vehicle to Prestige within 90 days after the due date of any defaulted payment, and (3) in the event Prestige breached "any of the foregoing warranties" and Mr. Knight defaulted. Because Prestige assigned the Knight Contract without recourse, Prestige could have guaranteed full performance of its terms only under the third condition–i. e., if Prestige breached any of the foregoing warranties and Mr. Knight defaulted.**

¶ **It is clear that the clause "any of the foregoing warranties" refers to the warranties of the first paragraph of the assignment provision. The words of a contract are to be understood in their ordinary and popular sense unless a special meaning is given to them by usage. Section 28-3-501, MCA. The ordinary meaning of foregoing is "just past; preceding; previously said or written." The American Heritage Dictionary of the English Language 514 (New College ed. 1980). Clearly, the warranties contained**

in the first paragraph of the assignment provisions precede the clause "any of the foregoing" contained in the second paragraph. Significantly, the clause is not expressly limited to warranties that might be contained in the second paragraph. Rather, the clause is expressly inclusive in that it refers to "*any*" of the foregoing.

¶ We conclude that the contract clearly and unambiguously states that upon the breach of the warranties contained in the first paragraph, the waiver of recourse against Prestige will be abrogated and Prestige unconditionally guarantees the full performance of the contract. Prestige conceded that it did not deliver a valid certificate of title within the time required by the warranty provisions. Accordingly, we agree with the District Court's conclusion that under the terms of the Knight Contract Prestige clearly and unambiguously guaranteed full performance.

¶ 2. Whether the District Court erred in awarding Arcadia the principal amount owing under the Knight Contract?

¶ The measure of damages for a breach of contract is determined in accordance with § 27-1-311, MCA. *Larson v. Undem* (1990), 246 Mont. 336, 805 P.2d 1318. Section 27-1-311, MCA, states:

**Breach of contract.** For the breach of an obligation arising from contract, the measure of damages, except when otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom. Damages which are not clearly ascertainable in both their nature and origin cannot be recovered for a breach of contract.

We have emphasized that the purpose of the above section is to compensate an aggrieved party for the loss sustained, and that the nonbreaching party should receive a sum which will give that party an economic status identical to that which it would have enjoyed had the contract been performed. *Como v. Rhines* (1982), 198 Mont. 279, 286, 645 P.2d 948, 952 (citations omitted).

¶ Prestige contends that had it delivered a valid certificate of title noting Arcadia's interest in Mr. Knight's vehicle within the time required by the contract, Arcadia would have had a perfected security interest in the vehicle, could have recovered it during Mr. Knight's bankruptcy proceedings, and could have sold it. Prestige argues that the damages sustained by Arcadia should be limited to the fair value of the vehicle at bankruptcy. Prestige argues that the only evidence of the value of the vehicle at that time is the $2200 the bankruptcy trustee received on its sale. Arcadia contends that Prestige unconditionally guaranteed full performance of the Knight

Contract and is therefore liable for $7232.29, the principal amount owing under the Knight Contract. The District Court awarded the principal amount owing under the terms of the Knight Contract to Arcadia.

¶ We conclude that § 27-1-311, MCA, does not limit Arcadia's damages to the amount received by the bankruptcy trustee upon the sale of Mr. Knight's vehicle. To limit Arcadia's damages to this amount would thwart the clear intentions of the parties at the time of contracting. We must interpret a contract so as to "give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Section 28-3-301, MCA. When interpreting a written contract, we are to ascertain the intention of the parties "from the writing alone if possible." Section 28-3-303, MCA.

¶ The contract states that if Prestige breached any of its warranties, it agreed to unconditionally guarantee the full performance of the Knight Contract in accordance with the terms of the guarantee endorsement. The guarantee endorsement provides that if Mr. Knight defaults for any reason, Prestige agrees to repurchase the contract for the amount then outstanding. From the language of the contract it is clear that at the time of contracting the parties contemplated that nonrecourse assignments would be conditioned upon Prestige's warranties. Or, stated another way, the inclusion of the unconditional guarantee manifests Arcadia's intent not to enter nonrecourse assignments with Prestige unless Prestige fulfills its warranties. In the event Prestige did not fulfill its warranties, the parties clearly intended that a nonrecourse assignment would convert into a recourse assignment, granting Arcadia the right to seek performance from Prestige in the event of the buyer's default.

¶ The Knight Contract was converted into a full recourse contract when Prestige did not send a valid certificate of title within the time required by the agreement. Once Mr. Knight defaulted on his payments, the terms of the guarantee endorsement required Prestige to repurchase the contract for the amount of principal remaining due. Prestige violated its unconditional guarantee by refusing to repurchase the Knight Contract. The detriment proximately caused by Prestige's failure to perform its guarantee is the principal amount due and owing on the contract.

¶ We affirm the District Court's Findings of Fact and Conclusions of Law awarding damages to Arcadia for the principal amount owing on the Knight Contract.

¶ 3. Whether the District Court erred in awarding attorney fees and costs to Arcadia?

¶ The District Court concluded that the express language of the Knight Contract entitled Arcadia to attorney fees and costs. Prestige argues that because it did not agree to repurchase the Knight Contract, it should have prevailed on its motion for partial summary judgment and that therefore it should be entitled to attorney fees.

¶ The Knight Contract states that Prestige will pay Arcadia's costs and attorney fees upon any suit

for breach of warranty. The District Court concluded that the terms of the Knight Contract required it to award attorney fees to Arcadia. Contractual provisions which grant one party the right to recover attorney fees in the event that party brings an action upon the contract are reciprocal and will be awarded to the prevailing party. Section 28-3-704, MCA. Although an award of damages is an important factor in determining who prevailed, it is not the dispositive factor. *Doig v. Cascaddan* (1997), 282 Mont. 105, 112-13, 935 P.2d 268, 272. Instead, we consider the "totality of the circumstances and facts" in determining who prevailed. *Doig*, 282 Mont. at 113, 935 P.2d at 273.

¶ We conclude that Arcadia prevailed based on the totality of the circumstances and facts in this case and that the District Court did not err in awarding Arcadia attorney fees and costs.

¶ Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.