DA 10-0192

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 102

IN RE THE MARRIAGE OF
SCOTT L. HART,

       Petitioner, Appellee and
       Cross-Appellant,

  and

MARGOT LUCKMAN HART,

       Respondent and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DR-93-77700
                Honorable Ed McLean, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

           Thorin A. Geist, P. Mars Scott Law Offices, Missoula, Montana

      For Appellee:

           Kenneth R. Dyrud, Dyrud Law Offices, P.C., Missoula, Montana


                          Submitted on Briefs:  March 23, 2011

                                      Decided:  May 12, 2011


Filed:

                _____
                            Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Margot Luckman Hart (Margot) appeals the June 2009 order of the Fourth Judicial District Court, Missoula County, denying her motion for determination of back child support and imposing sanctions for inconsistent pleadings.  Margot also appeals the March 2010 order of the District Court concluding that her ex-spouse, Scott L. Hart (Scott), did not owe her for back child support.  Scott cross-appeals the District Court's 2010 order arguing it failed to award his attorney fees pursuant to the terms of the Marital and Property Settlement Agreement.  Both Margot and Scott pray for attorney fees on appeal.  We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## ISSUES

¶2     A restatement of Margot's issues on appeal is:

1. Did the District Court err when it concluded Margot's statements filed with the court indicating that Scott was current on his child support obligations as of September 2001 constitute judicial admissions and thus preclude an award of back child support?

2. Did the District Court err when it determined that Margot had filed inconsistent pleadings and imposed sanctions against her?

3. Did the District Court err when it held that Scott did not owe Margot for back child support?

¶3     Scott raises the following issue on cross-appeal:  did the District Court err by failing to award Scott his attorney fees pursuant to a "prevailing party" contractual

2

provision, when the sanctions imposed on Margot covered only a portion of Scott's attorney fees?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Scott and Margot divorced in May 1993 and entered into a Marital and Property Settlement Agreement (hereinafter "Settlement Agreement") before the District Court. Pursuant to the Settlement Agreement, Margot and Scott's two children would live primarily with Margot and Scott would pay Margot child support payments of $150 (later $200) per month plus half the cost of the children's uninsured medical expenses.

¶5 In October 2000, Scott filed a Motion to Amend the Parenting Plan to reflect changes in the children's residency arrangements. In her response brief to Scott's motion, Margot set forth the statutory criteria to determine the best interests of the child and, in doing so, made the statement that "[t]here is no issue of Scott's having failed to pay child support." Following a contested hearing, each party submitted proposed findings of fact and conclusions of law. Margot again made the statement in Proposed Finding No. 40 that Scott was current with his child support obligations, but the court did not ultimately adopt this finding. In December 2001, the District Court granted Scott's motion as to the residency arrangement of the children; it did not modify child or medical support obligations.

¶6 In March 2003, Scott suffered a catastrophic injury for which he received social security disability benefits. In February 2008, as a result of Scott's injury, Margot received a lump-sum social security payment of $8,097 for each child, and she began receiving dependent's benefits of $274 per month for each child.

3

¶7    On June 9, 2008, Margot filed a Motion for Determination of Back Child and Medical Support Amount Due, in which she requested a determination of the child and medical support amounts due to her from Scott. Margot claimed Scott owed her over $34,000 in back child and medical support dating back to 1993. On July 31, 2008, Scott filed his response, disputing Margot's claims and arguing that Margot's statements regarding back child support were contradictory to earlier statements made under oath and otherwise. On October 1, 2009, the court held a hearing in which it received testimony from Margot and Nicholas L. Bordeau, an expert in child support determination hired by Scott. Mr. Bordeau opined that Margot was overpaid by at least $3,230.12 for the child support, accrued interest, and medical expenses obligations of Scott for the period of September 25, 2001, to March 26, 2003, regardless of whether the payments were applied first to principal and then to interest, or vice versa. The parties agreed that the lump-sum payment should be applied to Scott's outstanding child and medical support obligations; however, the parties disagreed as to whether the lump-sum should be applied first to principal or to interest. At that hearing, the court ordered that the lump-sum social security payment be applied first to principal and then to interest.

¶8    Ultimately, the District Court found that Scott was current on child support obligations through September 25, 2001, because Margot admitted as much in what the District Court concluded were judicial admissions. Further, the court found that the lump-sum social security payment was an overpayment, regardless of whether it was applied first to principal or to interest, and therefore concluded that Scott was not in

4

arrearage for past due child or medical support. Finally, the court awarded Scott attorney fees and costs as a sanction, because it concluded Margot's pleadings were inconsistent.

¶9 Margot timely appeals these orders and prays for attorney fees. Scott cross-appeals the District Court's March 23, 2010 order and prays for attorney fees. Additional facts are included below as necessary.

## STANDARDS OF REVIEW

¶10 We review a district court's findings of fact to determine whether they are clearly erroneous. *In re Szafryk*, 2010 MT 90, ¶ 18, 356 Mont. 141, 232 P.3d 361 (internal citations omitted). A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court has misapprehends the evidence, or if a review of the record leaves us with the definite and firm conviction that a mistake has been committed. *Id*. We review a district court's conclusions of law for correctness. *Id*.

¶11 We review a district court's grant or denial of attorney fees for abuse of discretion. *In re Marriage of Gorton,* 2008 MT 123, ¶ 45, 342 Mont. 537, 182 P.3d 746 (citing *In re Marriage of Mease*, 2004 MT 59, ¶ 57, 320 Mont. 229, 92 P.3d 1148).

## DISCUSSION

¶12 *Issue One: Did the District Court err when it concluded Margot's statements filed with the court indicating that Scott was current on his child support obligations as of September 2001 constitute judicial admissions and thus preclude an award of back child support?*

¶13 Margot acknowledges that she stated "[t]here is no issue of Scott's having failed to pay child support" in her November 2000 response to Scott's Motion to Amend Parenting Plan, and again asserted that "Scott is current with his child support obligations" in her

5

September 2001 Proposed Findings of Fact and Conclusions of Law filed with the District Court. She argues, however, that these statements do not constitute judicial admissions for two reasons. First, she asserts the statements are not judicial admissions because the issue of the children's residential arrangements, not child and medical support, were before the court when she made these statements. Second, she argues that her proposed finding cannot be a judicial admission because it was not ultimately adopted by the District Court in its December 21, 2001 order. However, Margot does not dispute either that she made these statements during the litigation surrounding interpretation of the Settlement Agreement or that they are statements of fact.

¶14 A judicial admission is "an express waiver made in court by a party or its counsel conceding the truth of an alleged fact," *Bitterroot Intl. Sys. v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 41, 336 Mont. 145, 153 P.3d 627. "A judicial admission has a conclusive effect upon the party who makes it, and prevents that party from introducing further evidence to prove, disprove, or contradict the admitted fact." *Id.* (internal citation omitted). To be binding, a judicial admission must be "an unequivocal statement of fact." *Denke v. Shoemaker*, 2008 MT 418, ¶ 84, 347 Mont. 322, 198 P.3d 284 (internal citation omitted). A judicial admission "may occur at any point in the litigation process." *Kohne v. Yost*, 250 Mont. 109, 112, 818 P.2d 360, 362 (1991).

¶15 Margot asserts that our review of judicial admissions must be guided by the five-part test set forth in *Conagra, Inc. v. Neirenberg*, 2000 MT 213, ¶ 45, 301 Mont. 55, 7 P.3d 369. However, *Conagra* is inapposite because the plain language of the five-part test and our analysis in that case clearly applies to testimonial declarations, not to

pleadings and other documents filed with the court. *See Conagra*, ¶¶ 44-45. Here, we are not concerned with testimonial declarations, but instead with the two separate occasions on which Margot filed written statements with the district court unequivocally stating that Scott was current with his child support obligations through at least September 2001. We have not extended—and do not extend today—the five-part test set forth in *Conagra* to pleadings and documents filed with the district court. The policy concerns surrounding testimonial declarations—that declarants may be easily swayed by aggressive cross-examination—simply do not exist when statements are written.

¶16 A written document, filed with a district court and signed by either the party or the party's attorney, is assumed to be, "to the best of the signer's knowledge, information, and belief formed after reasonable inquiry . . . well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law," as required by M. R. Civ. P. 11 (Rule 11). Both documents that contained Margot's statements above were signed by her attorney at the time and neither were superseded or withdrawn at any point. Thus, it was not error for the District Court to assume Margot's written statements were true and to conclude that the statements were judicial admissions.

¶17 Margot's alternative argument—that her September 2001 proposed finding of fact is not a judicial admission because the District Court did not adopt that finding—is likewise unsupported in law. On appeal Margot states that "the Montana Supreme Court has never examined whether judicial admissions may occur in proposed findings of fact and there is a split between how judicial admissions are treated at the Federal and State

7

levels." She then cites two federal cases for the proposition that "proposed findings of fact cannot constitute judicial admissions as they are 'no more than informal suggestions for the assistance of the court.' " However, even a cursory reading of the federal cases cited by Margot reveals that neither stands for such a bold proposition. Moreover, both cases are factually inapposite: *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 538 F. Supp. 1257, 1280 (N.D. Ohio 1980), which is a pretrial order on numerous issues presented prior to a retrial, refers to the evidentiary admissibility of proposed findings that had been withdrawn by the party; and *Parker v. Stern Bros. & Co.*, 499 S.W.2d 397, 411 (Mo. 1973), is a Missouri Supreme Court case that discusses proposed findings of fact from a related federal court case that were submitted as a basis for a pretrial order that was never signed. Margot cites no authority, nor do we find any, prohibiting district courts—which exercise independent judgment in reviewing proposed findings of fact— from ruling that statements made in proposed findings may constitute judicial admissions.

¶18    It is undisputed that Margot's statements were statements of fact. It is also undisputed that Margot made these unambiguous statements in filings with the District Court during the course of this case. We therefore conclude that these statements constitute judicial admissions and the District Court did not err in concluding that Scott was current with his child support payments through September 2001. We further conclude that the District Court did not err in concluding that these judicial admissions precluded Margot from now arguing the diametrically opposite position—that Scott owes her back child support from May 1993 until November 2001.

8

¶19  *Issue Two:  Did the District Court err when it determined that Margot had filed inconsistent pleadings and imposed sanctions against her?*

¶20  In its June 2009 order, the District Court granted Scott's motion for attorney fees "to the extent that any time [Scott's] attorney spent on the question of back child support . . . [shall be] awarded as sanctions for inconsistent pleadings of [Margot] as described [in this Order]."  In its March 2010 order, the District Court awarded Scott partial attorney fees "attributable to the child support dispute in the amount of $18,962.75 as of July 13, 2009."  The court order indicates that the amount of fees and costs is not contested, but the awarding of fees and costs is contested.

¶21  Though the parties presume in their arguments on appeal that the District Court awarded fees as sanctions pursuant to Rule 11, nowhere in its orders does the court clearly state under what authority it did so—Rule 11, M. R. Civ. P. 26(g) (discovery sanctions), § 37-61-421, MCA, its inherent authority, or otherwise.  Without knowing the legal basis for the sanction, it is impossible to ascertain whether the award constituted an abuse of discretion.  However, we conclude it is unnecessary to remand for a determination of the legal authority supporting the imposition of fees as sanctions, in light of our disposition of Issue Four (¶¶ 26-29), which resolves all outstanding questions regarding attorney fees.  We therefore vacate the order of fees as a sanction.

¶22  *Issue Three:  Did the District Court err when it held that Scott did not owe Margot for back child support?*

¶23  Margot argues, without citation to the record or much in the way of legal authority, that the District Court erred by relying on the testimony of Scott's expert witness, Nicholas Bordeau, at the hearing.  She complains that Bordeau's analysis was

9

erroneous because it presumed that Scott's excess social security disability payments should be applied first to the principal balance of child support arrearage and then to interest. Margot's cursory argument seems to be that such an application of social security payments misapplies Montana law because unpaid child support becomes a judgment debt similar to any other money judgment, and that payments thereon must first be applied to interest, rather than principal. Scott argues that the court did not err, and even if it did, the error was harmless because the bottom line was that regardless of whether the social security payment was applied first to principal or interest, the end result was that Margot was overpaid by roughly $3,230.

¶24 Margot again cites to inapplicable case law as authority for her position in her opening brief. "We have consistently held that, absent contrary provisions in a dissolution decree, interest on child support arrearage is automatically collectable by [the] judgment creditor spouse," and interpreted this to mean that district courts have latitude to calculate an award of child support payments and determine whether or not interest is available. *In re Marriage of Gingerich*, 269 Mont. 161, 167, 887 P.2d 714, 717-18 (1994). Further, we have held that a lump-sum social security payment should be applied to a parent's arrearage from the time the parent was eligible for social security until the children's monthly benefits commence. *In re Marriage of Cowan*, 279 Mont. 491, 503-04, 928 P.2d 214, 222 (1996) (relying on the plain language of Admin. R. M. 46.30.1542(1)(d), which was repealed in 1998 and transferred to Admin. R. M. 37.62.144(1)(d)).

¶25    Here, the District Court heard testimony from Bordeau, a CPA and expert witness on child support calculations. The record is replete with testimony, explanations, and exhibits of how Bordeau calculated the amount of child support owed to Margot and how he applied the lump-sum social security payment to the arrearage from the date Scott was eligible for social security benefits until the date the children began receiving monthly social security payments. The record also establishes that Bordeau offered numerous different methods for calculating Scott's child support obligations (including payment of interest first then principal), and concluded that in every scenario Margot was overpaid. Based on the record, we hold that the District Court did not err in concluding that Scott did not owe Margot for back child support.

¶26    *Issue Four: Did the District Court err by failing to award Scott his attorney fees pursuant to a "prevailing party" contractual provision when the sanctions imposed on Margot covered only a portion of Scott's attorney fees?*

¶27    Scott argues on cross-appeal that he is clearly the prevailing party and is entitled to recover all his attorney fees and costs, including those on appeal, pursuant to the attorney fees provision in the Settlement Agreement. Margot argues that Scott is not clearly the prevailing party because a reversal of any of the issues has a profound effect on the parties and their obligations.

¶28    Attorney fees provisions contained in marital settlement agreements are enforceable agreements and the district court is bound by the agreement's terms if they are clear. *In re Marriage of Caras,* 263 Mont. 377, 385, 868 P.2d 615, 619-20 (1994). In determining who is the prevailing party for purposes of attorney fees, no one factor is dispositive. *Doig v. Cascaddan*, 282 Mont. 105, 112-13, 935 P.2d 268, 272 (1997)

(citing *E.C.A. Env. Mgt., Inc. v. Toenyes*, 208 Mont. 336, 345, 679 P.2d 213, 217-18 (1984)). The party who is awarded a money judgment is not necessarily the successful or prevailing party; however, it is an important item to consider when deciding who, in fact, prevails. *Doig*, 282 Mont. at 112-13, 935 P.2d at 272.

¶29 The language of the Settlement Agreement is clear—Section VII states "in any action to enforce or interpret any provision of this agreement, the prevailing party shall receive costs and attorney's fees." Scott is clearly the prevailing party since the District Court determined not only that he was not in arrears on his child support obligation, but also that he had overpaid. Therefore, we conclude the District Court erred when it granted Scott only a portion of his attorney fees and costs as sanctions against Margot. By the terms of the Settlement Agreement, Scott should have been awarded all of his costs and attorney fees expended in defense of Margot's claims, as the prevailing party.

## CONCLUSION

¶30 For the foregoing reasons, we affirm in part and reverse in part and remand for further proceedings consistent with this Opinion. We affirm the District Court's conclusions that Margot's statements constituted judicial admissions and that Scott did not owe Margot back child support. We vacate the District Court's imposition of fees as sanctions. We deny Margot's request for fees and grant Scott's cross-appeal. We reverse and remand for a hearing to determine all fees incurred by Scott in response to Margot's June 9, 2008 motion to determine back child and medical support both in the District Court and on appeal. Scott shall not, however, recover those fees incurred in connection with his cross-motion to revise child support and for a new parenting plan.

¶31    Reversed and Remanded.


                                        /S/ PATRICIA COTTER


We concur:

/S/ JAMES C. NELSON
/S/ BETH BAKER
/S/ BRIAN MORRIS
/S/ JIM RICE