JUSTICE BAKER,
dissenting.
¶44 The disposition of this appeal turns on the written Agreement between the parties. Because the measure of damages for breach of that Agreement is a question of law that the District Court resolved incorrectly, I dissent from the Court’s decision to uphold the jury’s damage award. I would instead reverse on the third issue and remand for the District Court to enter an amended judgment limiting Goldan to recovery of three months’ worth of commissions. I would not address the other two issues.
¶45 Three points prove pivotal to proper analysis of the issue:
1. Farmers undisputedly breached the Agreement by terminating Goldan immediately without cause.
2. The Agreement could have been terminated on three months’ notice for any reason, but Farmers did not terminate the Agreement under this provision.
3. Goldan sought damages for breach of contract only.[1]
Under these facts, the Court improperly determines that the measure of Goldan’s contract damages exceeds what he could have recovered had the contract been performed.
¶46 First, the Court correctly observes that if one party breaches the contract, as Farmers did here, the measure of damages is “the amount which will compensate the party aggrieved for all the detriment which was proximately caused thereby or in the ordinary course of things would be likely to result therefrom.” Opinion, ¶ 41; Section 27-1-311, MCA. Although the calculation of the amount of contract damages is *316 a question of fact, see, e.g., Sack v. A.V. Design, 211 Mont. 147, 153, 683 P.2d 1311, 1315 (1984), the measure of damages in a breach of contract action is a question of law, Arcadia Fin., Ltd. v. Prestige Toyota, 1999 MT 273, ¶ 23, 296 Mont. 494, 989 P.2d 831 (observing that “[t]he measure of damages for a breach of contract is determined in accordance with § 27-1-311, MCA.”). See also McEwen v. MCR, LLC, 2012 MT 319, ¶ 85, 368 Mont. 38, 291 P.3d 1253 (Nelson, J., concurring) (stating that “the choice of the proper measure of damages is a question of law for the court, while the calculation of the amount of damages is a question of fact for the fact-finder”).
¶47 Second, the Court appears to recognize that this standard limits recoverable damages for breach of contract to those damages that are reasonably foreseeable or within the contemplation of the parties at the time of contracting. Opinion, ¶ 41; Ehly, 212 Mont. at 97, 687 P.2d at 695 (concluding that “[o]ur court, and courts everywhere, recognize ... recovery for consequential damages within the contemplation of the parties when they entered into the contract”); Mont. Petroleum Tank Release Comp. Bd., 2008 MT 2, ¶ 71, 341 Mont. 33, 174 P.3d 948; Hostetter v. Donlan, 221 Mont. 380, 382, 719 P.2d 1243, 1245 (1986). This application of the damages statute accords with the clearly stated rule that courts must interpret a contract so “as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.” Section 28-3-301, MCA.
¶48 Curiously, however, though it mentions § 27-1-303, MCA, in discussing Farmers’ first contention an appeal (Opinion, ¶ 18), the Court is silent on the statute’s application to the measure of damages. “A person may not recover a greater amount in damages for the breach of an obligation than the person could have gained by the full performance of the obligation on both sides.” Section 27-1-303, MCA. When a contract is breached, “the nonbreaching party should receive a sum which will give that party an economic status identical to that which it would have enjoyed had the contract been performed." Arcadia Fin., Ltd, ¶ 23. Accord Arrowhead Sch. Dist. No. 75 v. Klyap, 2003 MT 294, ¶ 20, 318 Mont. 103, 70 P.3d 250 (noting that the nonbreaching party should receive “compensation equal to what that party would receive if the contract were performed”). “The [principle] espoused in § 27-1-303, MCA, supports the well-established ‘benefit of the bargain rule.’ ” Textana, Inc. v. Klabzuba Oil & Gas, 2009 MT 401, ¶ 52, 353 Mont. 442, 222 P.3d 580 (citing Castillo v. Franks, 213 Mont. 232, 242, 690 P.2d 425, 430 (1984); § 27-1-311, MCA). Tied to that concept is the “fundamental tenet” of freedom of contract: “parties are free to mutually agree to terms governing their private conduct as long as *317 those terms do not conflict with public laws.” Arrowhead Sch. Dist. No. 75, ¶ 20. Among such permissible terms, parties are free to agree—as Farmers and Goldan did here—that their Agreement may be terminated for any reason upon the giving of specified notice. Arrowhead Sch. Dist. No. 75, ¶ 20.
¶49 The Court recognizes that most courts hold that when one party breaches a contract that may be terminated upon the giving of notice, the nonbreaching party’s damages are limited to the notice period. Opinion, ¶ 38. The proposition is widely accepted. A representative sample of cases includes the following: Odell v. Humble Oil & Refining Co., 201 F.2d 123, 128 (10th Cir. 1953) (concluding that although an employer breached an employment contract by firing employees for testifying against the employer in a criminal case, the employees’ damages were limited to thirty days because “I wlhere a contract of employment expressly empowers an employer to terminate the contract upon giving notice, recovery for wrongful breach is limited to the notice period”); Royal’s Reconditioning Corp. v. Royal, 689 N.E.2d 237, 241 (Ill. App. Ct. 1st Dist. 1997) (concluding that lost profit damages recoverable by employer for employee’s breach of contract were limited to the notice period, in part, because the “parties did not contemplate several years’ lost profits as damages because the contractual period for notice of termination was only 30 days”); Hentze v. Unverfehrt, 604 N.E.2d 536, 612 (Ill. App. Ct. 5th Dist. 1992) (concluding that trial court’s award of nominal damages for breach of an indefinite dealership contract, which was terminable at will on sixty days’ notice, was proper because “clearly five years of lost profits were not within the contemplation of the parties at the time of entering into the contract”); Shivers v. John H. Harland Co., 423 S.E.2d 105, 106 (S.C. 1992) (concluding that “where a provision in a contract of employment allows the employer to terminate the contract for any reason upon giving fifteen days’ notice, [and] the employer instead discharges the employee for cause under another provision of the contract without giving notice, and a jury finds that the discharge for cause is wrongful,” the employee’s recovery of damages was limited, as a matter of law, to the notice period even when the employee had been employed by the employer for over fourteen years,); Burch v. Lake Forest Property Owners’ Ass’n, 565 So. 2d 611, 612 (Ala. 1990) (concluding that an employer’s “violation of the notice provision does not entitle [the employee] to compensation for the entire contract period”); Pharo Distributing Co. v. Stahl, 782 S.W.2d 635, 638-39 (Ky. Ct. App. 1989) (concluding, “It is not the termination of an at-will contract that constitutes the breach; the right to terminate is inherent *318 in the nature of the contract. ... Rather, it is the failure to give reasonable notice before termination that constitutes breach.” Thus, the nonbreaching party’s “damages may not reflect loss of a contract or discontinuance of the business relationship” when the breaching party breached an on-going distributorship contract.); Martin v. U-Haul Co. of Fresno, 204 Cal. App. 3d 396, 409 (Cal. App. 5th Dist. 1988) (concluding that a nonbreaching party’s damages were limited to the notice period because “[plarties who agree that a contract may be terminated for any reason, or no reason, upon the giving of the specified notice could not reasonably anticipate that damages could exceed that notice period”).
¶50 But the Court fails to acknowledge that the rule applies equally in jurisdictions that, like Montana, limit contract damages to those that are reasonably foreseeable and are within the contemplation of the parties at the time of contracting. See, e.g., Martin, 204 Cal. App. 3d at 408-09 (analyzing a California statute nearly identical to § 27-1-311, MCA); Hentze, 237 Ill. App. 3d at 612, (stating that the rule in Illinois is that “I r lecovery of lost profits are allowable if... such profits were within the reasonable contemplation of the parties at the time the contract was entered”; therefore, for breach of a contract that could be terminated upon sixty days’ written notice, “damages for lost profits exceeding these 60 days could not have been contemplated”); Asamoah-Boadu v. State, 328 S.W.3d 790, 796-97 (Mo. Ct. App. 2010) (concluding that damages for “lost profits must be limited to the termination period,” in part because the rule in Missouri is that “[i]n an action for breach of contract, lost profits are recoverable where the loss is the natural and proximate result of the breach ... and within the contemplation of the parties when the contract was made”).
¶51 By emphasizing Farmers’ admittedly wrongful termination without notice, the Court overlooks the fact that all of the above-cited cases are breach of contract cases. The longstanding principle they espouse is that “if a person refuses to perform a contract which is terminable by him upon certain conditions, the amount of money he would have to pay in exercising his election to terminate becomes the measure of damages for his breach.” Martin, 204 Cal. App. 3d at 408. The same principle is recognized in the law of contracts and remedies. See 1 Robert L. Dunn, Recovery of Damages for Lost Profits § 6.19 530-31 (6th ed. 2005) (stating that where a contract may be terminated on specified notice but is terminated prematurely, “[m]ost of the cases limit damages recoverable to those suffered within the notice period”). Obviously, it applies only when “the manner in which [the contract is] terminated” does not meet the notice requirements. Opinion, ¶ 38.
*319 ¶52 It is of no consequence to the measure of damages that Farmers first invoked the agreed-upon limitation in a motion in limine. Opinion, ¶ 39. As the Agreement long had ceased to exist, the purpose of the motion was not to raise a late defense that the Agreement properly had been terminated without cause, but to assess a maximum limit on Goldan’s recovery should he prove that Farmers’ “with cause” termination breached the Agreement because the stated cause was false. Goldan undoubtedly had “the right... to seek damages for breach of the contract.” Opinion, ¶ 40. But that statement alone does not answer the question before us.
¶53 A party to a contract generally has “the right to breach and pay damages rather than perform. The non-breaching party, theoretically, is ‘made whole’ from the damages paid following the breach and thus still receives benefits from the agreement.” Rowland v. Klies, 223 Mont. 360, 370, 726 P.2d 310, 317 (1986) (quoting Nicholson v. United Pacific Ins. Co., 219 Mont. 32, 41, 710 P.2d 1342, 1348 (1985)). When a party breaches the contract, courts will award “compensation equal to what [the non-breaching] party would receive if the contract were performed ... rather than additional damages intended to punish the breaching party for failure to perform the contract.” Arrowhead Sch. Dist. No. 75, ¶ 20.
¶54 The Court’s reliance on Tvedt misses the mark. Tvedt claimed that Farmers’ termination of the contracts without good cause and on proper notice “constitut[ed] a breach of the covenant of good faith and fair dealing implicit in [the written contracts].” Tvedt, ¶ 20. The covenant arises not from the contract itself, but from the parties’ justifiable expectations. Rowland, 223 Mont. at 370, 726 P.2d at 317 (citing Nicholson, 219 Mont. at 41, 710 P.2d at 1348). The Court fixates on the wrong question—whether the termination was “for cause” or “without cause” (Opinion, ¶ 40)—when there is no question that the Agreement was breached, and when the only issue is the measure of contract damages. In a common contract action, “tort-type damages are not available for breach of the implied covenant of good faith and fair dealing. They are, however, available for traditional contract-related torts such as fraud, fraudulent inducement, and tortious interference with a contract.” Story v. City of Bozeman, 242 Mont. 436, 451, 791 P.2d 767, 776 (1990), overruled in part, Arrowhead Sch. Dist. No. 75, ¶ 54). Goldan sought none of these remedies. His damages are limited to contractual damages only. Section 27-1-303, MCA.
¶55 Had Farmers performed its Agreement, Goldan would have worked another three months following Farmers’ notice and earned three months’ worth of commissions from the business he produced.
*320 Upon termination, Goldan would be entitled to the “contract value” as defined by the Agreement.[2] By breaching the Agreement, Farmers now must put Goldan in as good a position as if it had performed: by paying him damages equivalent to the three months’ worth of commissions he presumably would have earned with proper notice. The Court fails to honor the law’s presumption that, when he signed the Agreement with Farmers, Goldan was “in the best position to make decisions in [his] own interest.” Arrowhead Sch. Dist. No. 75, ¶ 20. For Goldan to recover future lost profits as contract damages, they must have been within his reasonable expectation at that time. Ehly, 212 Mont. at 97, 687 P.2d at 695. Additional damages, like those Goldan might have claimed in tort, are not implicated. The Court does not explain how Goldan’s “full measure of damages resulting from [Farmers’] wrongful breach” (Opinion, ¶ 41) can be something other than Goldan’s contractual expectation.
¶56 It is an understatement to characterize this analysis as the “majority” rule. Opinion, ¶ 38. Goldan cites but one case, Chevrolet Motor Co. v. Gladding , 42 F.2d 440 (4th Cir. 1930), to support his argument that damages may not be limited to the contractual notice period. Gladding involved a sales contract that contained three termination provisions, not one of which allowed termination at will, without cause. Gladding, 42 F.2d at 441-42. The contract construed in Gladding thus is materially different from the parties’ Agreement here. See Strategic Outsourcing, Inc. v. Cont’l Cas. Co., 274 Fed. Appx. 228, 234 (4th Cir. 2008) (concluding that the Gladding court’s reasoning was “inapposite” because “the cancellation provision [in the contract at issue] did not require specific cause”);[3] Ford Motor Co. v. Kirkmeyer Motor Co., 65 F.2d 1001, 1004 (4th Cir. 1933) (concluding that “under the peculiar provisions of [the Gladding] contract... [the contract] might be terminated, not at will, but upon conditions *321 specified in the contract”); In re Petroleum Carriers Co., 121 F. Supp. 520, 526 (D. Minn. 1954) (distinguishing the Gladding contract “because [its] contract provision provided for termination upon the existence of specified conditions which were not met”).
¶57 Unlike the Gladding contract, Farmers did not need to prove a specific condition in order to terminate the Agreement—it could be terminated without cause. The Fourth Circuit has not applied the rule it espoused in Gladding to contracts allowing termination without cause in the more than eighty years since. See Strategic Outsourcing, Inc., 274 Fed. Appx. at 235; Trimed, Inc. v. Sherwood Medical Co., 977 F.2d 885, 892 (4th Cir. 1992) (upholding a jury’s damage calculation after concluding that the lower court properly instructed the jury that lost profits would be limited to those incurred during the six months following the breach of a contract that could be terminated “without cause at any time with six months’ notice”).
¶58 In summary, at the time of contracting, when he agreed to termination on three months’ notice, Goldan could not reasonably have anticipated that he would receive five years’ worth of lost profits. He instead is entitled to what he would have received had the Agreement been performed. Arcadia Fin., Ltd., ¶ 23. If Farmers had fully performed its obligation—that is, if Farmers had not breached the Agreement by terminating Goldan immediately without cause—it could have terminated the Agreement on three months’ notice for any reason. Goldan therefore cannot recover a greater amount in damages than he could have recovered had Farmers terminated the Agreement with proper notice.
¶59 The Court does not explain why Montana should stand alone in refusing to enforce the expectations of the parties, except to protest that Farmers treated Goldan unfairly. Opinion, ¶ 42. That may be true. But it harkens a remedy in tort, which Goldan did not seek. The District Court should have, as a matter of law, limited Goldan’s damages to the three-month notice period provided for in the termination clause. I would reverse the District Court’s judgment on the jury’s award of damages and remand to the District Court for further proceedings to re-calculate the amount of damages.

 Goldan did not raise a claim for breach of the implied covenant of good faith and fair dealing in his Counterclaim. Although he attempted to raise the issue later in the proceedings, the District Court ruled that he had not done so properly by moving to amend his pleadings. The court advised the parties during the final pretrial conference that an implied covenant claim would not be allowed, and refused Goldan’s profferedjury instructions relating to that theory of recovery. Goldan does not challenge the court’s ruling.

 Under the Agreement, termination for any reason obligated Farmers to pay “contract value” to Goldan in installment payments. Contract value was based on the amount of service commissions paid to Goldan during either the six-month or twelvemonth period preceding termination, the number of active policies Goldan held, and the number of years Goldan had been an agent for Farmers. Farmers’ only “claim for damages against Goldan” (Opinion, ¶ 40) was to seek recovery of the portion of this contract value it already had paid him, on the theory that Goldan had breached the Agreement.

 Fed. R. App. P. 32.1 allows citation to unpublished federal opinions issued on or after Jan. 1, 2007.