No. 82-07

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

VIVIAN B. BRIDAHAM, formerly known
as VIVIAN B. MOORE,

Plaintiff and Respondent,

-vs-

ROBERT J. MOORE and RUBY RANCH,
a Mont. Partnership,

Defendants and Appellants.

Appeal from: District Court of the Fifth Judicial District,
In and for the County of Madison, The Honorable
W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Chester Lloyd Jones, Virginia City, Montana

For Respondent:

Poore, Roth, Robischon & Robinson, Butte, Montana

Submitted on Briefs: March 18, 1982

Decided: July 8, 1982

Filed: JUL 8 - 1982

Thomas J. Kearney
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Defendants, Robert J. Moore and Ruby Ranch, appeal from a November 30, 1981, amended judgment holding defendants jointly and severally liable to respondent, Vivian Moore, for the sum of twenty-six thousand one hundred fifty-eight dollars ($26,158.00), as well as interest, attorneys' fees, and litigation expenses.

On November 1, 1978, Vivian Moore entered into a partnership named "Ruby Ranch," whose purpose was to operate a cattle ranch in Madison County, Montana. The other partners were Mrs. Moore's former husband, Thomas M. Moore; her brother-in-law, Robert J. Moore; and A. Marshall Bell, III. Mr. and Mrs. Moore were the managing partners.

The partnership was formed by an "Articles of Partnership," Article XVIII being especially relevant to the instant case:

### "RETIREMENT

"Any partner may retire from the partnership as of the end of any calendar month, after giving the other partners at least sixty (60) days' notice in writing of his intention to do so . . . In the event of the retirement or death of a partner, neither the partnership nor its fiscal year shall be terminated, and the remaining partners shall continue the business and shall succeed to the interest of the retired or deceased partner by paying to him or his representative the then balance in his capital and undistributed profits account, and his pro rata share of the income of that fiscal year based on the ratio of the number of days prior to death, or retirement, to the number of days in the fiscal year. . ."

Article VI states that the following figures will be used in the event initial capital is returned to the partners:

| | | |
|---|---|---|
| Thomas M. Moore | $73,900.00 | 27.5% |
| Vivian B. Moore | $55,500.00 | 20% |
| Robert J. Moore | $73,500.00 | 27.5% |
| A. Marshall Bell III | $80,000.00 | 25% |

Article X defines "net profits and losses" and provides for the use of these same percentages in their distribution.

In September of 1979, Vivian and Tom Moore decided it would be wise to try to sell the ranch on the general market. Robert Moore and Marshall Bell did not wish to sell the ranch, so they offered to buy out Tom and Vivian. An "Agreement for Sale and Purchase of Partnership Interest" was prepared by the partnership's attorney. On December 20, 1979, the agreement was executed by Vivian as seller and by Robert J. Moore, on behalf of the Ruby Ranch, as buyer. The agreement contained a provision which authorized Robert J. Moore to execute the agreement, thereby binding Ruby Ranch.

Tom and Vivian Moore were in the process of obtaining a divorce. Therefore, Tom Moore's interest was handled separately and is not a subject of this dispute.

The Agreement for sale and purchase contained the following pertinent provisions:

> "Whereas, Seller is desirous of selling and Buyer is desirous of purchasing all of Seller's right, title and interest in and to the Montana co-partnership generally known and referred to as the 'Ruby Ranch'. . .Seller agrees to sell and Buyer agrees to purchase all of Seller's right, title and interest in and to that certain Montana co-partnership. . .

> "It is agreed and understood by and between the parties hereto that the partnership interest being sold by Vivian B. Moore unto the partnership is that partnership interest as set forth in the original Articles of Partnership dated November 1, 1978, specifically Twenty (20%) percent of the total partnership."

> "It is agreed and understood by and between the parties hereto that the purchase price to be paid by Buyer unto Seller. . .is the sum of One Hundred Five Thousand Four Hundred Thirty-One Dollars ($105,431.00). . ."

The sale Agreement required Vivian to resign from the Ruby Ranch partnership, give the partnership a quit claim deed of her interest in the partnership and recognize a credit of $1,431 to be given to the buyer. She completed all requirements.

The Agreement required the partnership to do the following in return:

1. Convey a house in Sandpoint, Idaho, to Vivian for a $55,000 credit on the sale price of $105,431.

2. Pay Vivian $25,000 cash on or before December 31, 1979.

3. Transfer to Vivian the title to a 1978 Peugeot car valued at $2,000.

4. Issue and deliver to Vivian a promissory note for $22,000.

5. Grant Vivian a security interest in cattle as security for the promissory note.

The partnership has performed all its requirements except that of honoring the promissory note when it became due.

Vivian filed a complaint against Robert Moore and Ruby Ranch on October 24, 1980. In the complaint, she requested immediate possession of the livestock, which was the security for the note; judgment against defendant for the amount of the note, $22,000 and interest; and reasonable attorney's fees in the amount of Five Thousand Dollars ($5,000).

In granting judgment for plaintiff Moore, the District Court found that contrary to defendants' allegations, Vivian Moore had not retired from the partnership, pursuant to Article XVIII, Articles of Partnership. Rather, the judge found that Vivian had sold her interest to the partnership;

that the "Agreement for Sale and Purchase of Partnership Interest" was supported by sufficient consideration and was valid; that the promissory note was a negotiable instrument supported by valuable consideration and that the note was binding on defendants. The judgment was later amended to correct clerical error. We affirm the amended judgment but also remand this cause to the trial court for a determination of reasonable attorney's fees on appeal to be awarded respondent.

Robert J. Moore and the Ruby Ranch present the following issues on appeal:

1. Whether the original partnership agreement, the Articles of Partnership, should control the sale of plaintiff's partnership interest to the partnership.

2. Whether the partnership is entitled to a refund of those amounts paid to Moore which exceed the amount Moore would have received had she retired.

Issue number one is dispositive.

Defendants' major contention is that Vivian Moore, by selling her interest in the partnership, retired from the partnership. Retirement is controlled by Article XVIII of Ruby Ranch's Articles of Partnership. Pursuant to that article, a retiring partner is eligible for "the then balance in his capital and undistributed profits account, and his pro rata share of the income of that fiscal year. . ."

According to the evidence presented at trial, Mrs. Moore would have received $55,650.00 plus interest of $6,492.50, for a total of $62,142.50, had she retired. Pursuant to the "Agreement for Sale and Purchase of Partnership Interest," Mrs. Moore was to receive money and property totalling $105,431.00. She has in fact received money and property

totalling $83,841.00. Therefore, defendants contend that Mrs. Moore owes them $21,698.50 and that they need not honor the promissory note as there is no consideration to support it.

Moore contends that the Articles of Partnership do not apply to this transaction as she did not retire from the partnership. Rather, Mrs. Moore contends that she sold her partnership interest to the partnership and that the "Agreement" is binding on the parties.

Whether, by selling her interest in the partnership, Mrs. Moore "retired" from the partnership, as contemplated by Article XVIII, is irrelevant. The "Agreement for Sale and Purchase of Partnership Interest," not the "Articles of Partnership," controls this transaction. The parties chose to enter into the "Agreement" when Mrs. Moore decided to sell, and the partnership decided to buy, her interest. They therefore chose not to act pursuant to the original "Articles of Partnership."

> "If the parties to a contract make a new and independent agreement concerning the same matter, and the terms of the latter are so inconsistent with those of the former that they cannot stand together, the latter may be construed to discharge the former."
> Kester v. Nelson (1932), 92 Mont. 69,74, 10 P.2d 379, 380.

A later written contract may alter or modify terms of a former contract if both parties agree to the new contract and it is supported by adequate consideration. Section 28-2-1602, MCA; Jenson v. Olson (1964), 144 Mont. 224, 395 P.2d 465; Sturm v. Boker (1893), 150 U.S. 312, 37 L.Ed. 1093, 14 S.Ct. 99.

Both parties voluntarily entered into the "Agreement for Sale and Purchase of Partnership Interest"; therefore, both parties agreed to the new contract. Mrs. Moore resigned

from the Ruby Ranch partnership and gave the partnership a quit claim deed of her interest in the ranch. There was adequate consideration to support the second contract.

The "Agreement" is the contract controlling the sale of Mrs. Moore's interest in "Ruby Ranch" to the partnership. The "Agreement" provided for a promissory note for $22,000, plus ten percent interest per annum, to be paid to Mrs. Moore by the partnership on or before June 1, 1980. Defendants defaulted on the note.

The note provides that should default occur, "the whole amount shall become immediately due and payable . . . together with any reasonable expenses incurred by the holder thereof in collecting or enforcing payment thereof, including, but not limited to, reasonable attorney's fees."

The District Court's judgment is pursuant to the terms of the note and is affirmed. Moore's award of ten percent interest on the costs she incurred in collecting on the note is pursuant to section 25-9-205, MCA, and is also affirmed. Finally, we remand this cause to the District Court for a determination of the appropriate attorney's fees on appeal to be awarded respondent.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices