FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0795

DA 14-0795

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2015 MT 186

MONTANA HEALTH NETWORK, INC.,
a Montana corporation,

      Plaintiff and Appellant,

  v.

GREAT FALLS ORTHOPEDIC
ASSOCIATES, a Montana corporation,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eighth Judicial District,
                    In and For the County of Cascade, Cause No. ADV 11-0420
                    Honorable Gregory G. Pinski, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Steven R. Milch, Crowley Fleck PLLP; Billings, Montana

      For Appellee:

            Robert Pfennigs, Joshua I. Campbell, Jardine, Stephenson, Blewett, and
            Weaver, P.C.; Great Falls, Montana

Submitted on Briefs:  May 13, 2015
Decided:  June 30, 2015

Filed:

_____
                            Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Montana Health Network, Inc. (MHN) appeals from the order of the Montana Eighth Judicial District Court, Cascade County, denying its motion for summary judgment and granting summary judgment to Great Falls Orthopedic Associates (GFOA). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 MHN maintains a multiple employer health and welfare plan and trust known as the Montana Health Network Health Insurance Plan & Trust (the Plan). MHN is the designated Sponsor and Trustee of the Plan and was its sole drafter. GFOA is a medical clinic located in Great Falls which provides medical services to residents of Great Falls and the surrounding areas.

¶3 Around October 1, 2005, GFOA and MHN executed a document entitled Montana Health Network Health Insurance Plan & Trust Adoption Agreement (the Adoption Agreement) under which GFOA would adopt the Plan for purposes of obtaining coverage for its employees and would agree to be bound by its terms. The Adoption Agreement was drafted by MHN specifically for GFOA and by its terms incorporated the Plan.

¶4 The initial term of the Adoption Agreement ran from October 1, 2005 to December 31, 2008. The Adoption Agreement was then automatically renewed for a two year term beginning on January 1, 2009 and running until December 31, 2010. By the provisions of the Adoption Agreement and the Plan, the automatic term renewals would continue every two years unless GFOA provided notice of its intent not to renew at least 30 days prior to the commencement of a new term.

2

¶5    On December 10, 2010, GFOA sent MHN an e-mail stating that it did not wish to renew the plan for the 2011-2012 term. GFOA followed up on that e-mail with a letter dated December 15, 2010, wherein GFOA stated that it wished to withdraw from the Plan on January 15, 2011. At the time, the Plan covered around 30 eligible GFOA employees.

¶6    MHN denied GFOA's attempt to withdraw from the Plan, pointing out that under the Plan GFOA was required to give notice by December 1, 2010, if it wished to avoid automatic renewal of the Adoption Agreement for the term of January 1, 2011 to December 31, 2012.

¶7    GFOA did not challenge MHN's refusal to grant a withdrawal from the Plan. Instead, GFOA submitted waivers of coverage for 27 of its covered employees, and ceased submitting premium payments for those employees. Five GFOA employees remained covered by the Plan and GFOA continued to pay premiums for their coverage.

¶8    The GFOA employee waivers were submitted pursuant to Paragraph 4 of the Adoption Agreement, which stated, in part:

> [a]n employee may waive coverage for any Plan Year by executing and returning a waiver form provided by Montana Health Network, Inc. at the time provided for initial enrollment, or during the annual enrollment period.

¶9    MHN denied the waivers based on the fact that, if the waivers were granted, GFOA would not be in compliance with Section 2.1 of the Plan, which stated, in part:

> [i]t shall be a continuing condition of participation by any Eligible Employer that seventy-five percent of such Eligible Employer's Employees in each class of Eligible Employees be Participants in the Plan.

¶10    GFOA did not remit payment for the premiums of the 27 employees who submitted waivers. On March 4, 2011, MHN declared GFOA in default and, under an

3

acceleration provision in the Plan, assessed liquidated damages of $400,674.00, immediately due and payable. GFOA did not pay the assessed damages.

¶11 On May 6, 2011, MHN filed a breach of contract action against GFOA. Both parties moved for summary judgment. On September 23, 2013, the District Court issued an order denying summary judgment to MHN and granting summary judgment to GFOA. The court later amended its judgment to grant attorney's fees to GFOA. MHN appeals.

## STANDARDS OF REVIEW

¶12 We review a district court's grant of a summary judgment motion de novo, applying the same Rule 56, M. R. Civ. P. criteria as the district court. *Krajacich v. Great Falls Clinic, LLP*, 2012 MT 82, ¶ 8, 364 Mont. 455, 276 P.3d 922. The interpretation of a contract, including whether the contract is ambiguous, is a question of law, which we review for correctness. *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 2013 MT 179, ¶ 25, 370 Mont. 529, 305 P.3d 781.

## DISCUSSION

¶13 In granting summary judgment to GFOA, the District Court found that the waiver provision of the Adoption Agreement and the 75% provision of the Plan conflicted such that the contract as a whole was ambiguous. The court therefore interpreted the contract most strongly against the drafter, MHN, and found that GFOA did not breach the contract.

¶14 MHN argues that the District Court erred when it concluded that the contract was ambiguous. MHN further argues that, if we reverse the District Court, we should uphold the validity of the acceleration clause or, in the alternative, remand for a determination of

4

actual damages. However, because we affirm, we need not address the enforceability of the acceleration clause. As an additional matter, we will address GFOA's request for attorney's fees incurred defending this appeal.

¶15 *Did the District Court err when it found the contract ambiguous and granted summary judgment to GFOA?*

¶16 As a preliminary matter, we note that the Adoption Agreement and the Plan must be interpreted as part of a single contract. "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction are to be taken together." Section 28-3-203, MCA. As explained by the District Court, "[h]ere, the Plan and Adoption Agreement are not mutually exclusive. The Plan is only enforceable through the Adoption Agreement. The Adoption Agreement binds the parties to the Plan. This Court must interpret the contracts as an integrated agreement." We will likewise consider provisions in the Plan and in the Adoption Agreement to be part of the same document.

¶17 As stated above, Paragraph 4 of the Adoption Agreement reads in part:

> [a]n employee may waive coverage for any Plan Year by executing and returning a waiver form provided by Montana Health Network, Inc. at the time provided for initial enrollment, or during the annual enrollment period.

Section 2.1 of the Plan states in part:

> [i]t shall be a continuing condition of participation by any Eligible Employer that seventy-five percent of such Eligible Employer's Employees in each class of Eligible Employees be Participants in the Plan.

¶18 The District Court concluded that these two provisions were irreconcilable and thus created an ambiguity in the contract. MHN disagreed, arguing that it was a perfectly

5

reasonable construction of the contract to interpret Paragraph 4 as allowing employees to waive coverage while at the same time interpreting Section 2.1 as requiring the employer to pay premiums for at least 75% of eligible employees, regardless of how many had waived coverage. The District Court reasoned that this construction would create an absurd result. As the court explained, MHN's proposed interpretation would require GFOA to pay premiums for 75% of eligible employees even if all employees waived coverage. Furthermore, the open enrollment period for employees ended on December 31 of the plan year. Thus, on its December 1 withdrawal deadline, GFOA would not necessarily have known whether MHN would meet the 75% participation requirement for the upcoming year.

¶19    The District Court pointed out that MHN was the sole drafter of both the Adoption Agreement and the Plan, but failed to include any provision that could reconcile conflicts between the two parts of the contract. As a result, the court turned to general principles of contract interpretation. The court enunciated the rule of construction that, in general, if the terms of a later contract contravene the terms of a former contract, the later contract controls. Applying this principle, and considering the fact that MHN drafted the Adoption Agreement specifically for GFOA, whereas the Plan was drafted for general application, the District Court concluded that the Adoption Agreement was adopted to modify the Plan. Thus, the court found Paragraph 4 to be controlling with respect to Section 2.1. As a result, the court found that GFOA properly submitted waivers for 27 of its employees, and there was no breach of contract.

6

¶20     We agree with the District Court's analysis. A contract must be given a reasonable interpretation. Section 28-3-201, MCA. The language of a contract governs its interpretation unless that language would result in an absurdity. Section 28-3-401, MCA. In other words, interpretation must be reasonable. Section 1-3-233, MCA.

¶21     We recognize that in interpreting a contract we must endeavor to give effect to every part of the contract whenever reasonably practical. Section 28-3-202, MCA. In this case, however, giving effect to both provisions at issue is not reasonably practical. As written, the interplay between Paragraph 4 and Section 2.1 is ambiguous. Paragraph 4 of the Adoption Agreement provides *the employees* with the unqualified power to waive coverage, and nothing elsewhere in the Adoption Agreement requires the employer to pay premiums for employees who decide to waive that coverage. However, Section 2.1 of the earlier Plan imposes upon *the employer* the strict duty to maintain 75% participation. We do not see how the right granted to the employees can be plainly reconciled with the duty imposed on the employer, except, as noted by the District Court, in the absurd interpretation whereby the employer would be required to pay coverage premiums for employees who have waived coverage. Montana law compels us to reject an interpretation that would lead to absurdities. We are left to conclude that one provision must take precedence over the other. Either employees have the unqualified right to waive coverage, regardless of any effect on participation percentages, or employers have the implied right to prohibit employee waiver in order to maintain 75% participation. Each of these interpretations is reasonable, but neither is expressly favored in the contract.

¶22 Where contracts are ambiguous, we will construe the ambiguity "most strongly" against the drafter. *West v. Club at Spanish Peaks L.L.C.*, 2008 MT 183, ¶ 53, 343 Mont. 434, 186 P.3d 1228; § 28-3-206, MCA. In this instance, it is undisputed that both the Plan and the Adoption Agreement were drafted solely by MHN. Thus, we construe the ambiguity and confusion engendered by the conflicting provisions most strongly against MHN.

¶23 Furthermore, as explained by the District Court: when the terms of a former contract are contradicted by the terms of a later contract relating to the same subject matter, the later contract controls. *Bridaham v. Moore*, 199 Mont. 161, 166, 648 P.2d 731, 734 (1982); *Kester v. Nelson*, 92 Mont. 69, 74, 10 P.2d 379, 380 (1932); *see also Frank v. Cobban*, 20 Mont. 168, 171, 50 P. 423, 424 (1897). The Plan was originally drafted by MHN in 1993 and–prior to GFOA adopting the Plan by executing the Adoption Agreement in October 2005–was last amended in November 2003. Thus the doctrine that the most recent contract controls would result in Paragraph 4 being read as the controlling provision.

¶24 Additionally, the fact that the Plan was drafted to apply generically to Qualified Employers, whereas the Adoption Agreement was drafted specifically for GFOA, suggests that the Adoption Agreement was meant to contain specific provisions that might alter or supersede provisions of the Plan. "Particular expressions qualify those which are general." Section 1-3-225, MCA. Or, as stated by the District Court:

> [i]mportantly, the Plan is generic in its application to participants like GFOA. The Adoption Agreement, on the other hand, is specific to GFOA's adoption of the generic Plan. A reasonable interpretation is that

8

the Adoption Agreement inherently modifies the Plan as it applies to GFOA.

¶25 Finally, the District Court noted that MHN's conduct in failing to enforce the 75% provision supports the interpretation that the waiver clause controls. MHN's CEO testified that MHN never treated the waiver provision as limited by the 75% provision. Furthermore, MHN admits that it never enforced the 75% provision, never rejected a waiver based on the provision, and in fact had no enforcement mechanism in place. The District Court correctly found that MHN's conduct with respect to the 75% provision supported the conclusion that the waiver provision was meant to modify the 75% provision, not vice versa.

¶26 *Is GFOA entitled to attorney's fees under the plan for defending this appeal?*

¶27 GFOA requests attorney's fees incurred while defending this appeal. MHN does not contest GFOA's request. The Plan and the Adoption Agreement contain nearly identical provisions requiring the Employer to indemnify MHN for all expenses, including attorney's fees, arising out of a breach of the contract. In Montana, provisions granting attorney's fees to one party are reciprocal by statute. Section 28-3-704, MCA, provides:

> Whenever, by virtue of the provisions of any contract or obligation in the nature of a contract . . . one party to the contract or obligation has an express right to recover attorney fees from any other party to the contract or obligation in the event the party having that right brings an action upon the contract or obligation, then in any action on the contract or obligation all parties to the contract or obligation are considered to have the same right to recover attorney fees and the prevailing party in any action, whether by virtue of the express contractual right or by virtue of this section, is entitled to recover reasonable attorney fees from the losing party or parties.

9

¶28 Applying the statute, it is clear that GFOA has the right to recover attorney's fees under the terms of the contract if it is the prevailing party. MHN does not contest this assertion. Because we affirm the District Court, GFOA is the prevailing party in this action and is entitled to the reasonable attorney's fees accrued while defending this appeal.

## CONCLUSION

¶29 We concur with the District Court that the 75% provision of Section 2.1 of the Plan and the waiver provision of Paragraph 4 of the Adoption Agreement are incompatible and render the contract ambiguous. Interpreting the contract most strongly against the drafter, and considering the facts that the Adoption Agreement is the most recent document, that the Adoption Agreement was meant to apply specifically to GFOA while the Plan was prepared for generic use, and that MHN's conduct demonstrated a lack of concern for enforcing the 75% provision, we conclude that the waiver provision controls. Thus GFOA properly submitted waivers for 27 employees and did not breach the contract by falling below 75% participation. The District Court did not err when it interpreted the contract thusly and granted summary judgment to GFOA. Because we determine that GFOA did not breach the contract we need not consider the enforceability of the acceleration clause in the Plan. GFOA is entitled to its attorney's fees accrued while defending this appeal.

¶30 Affirmed.

/S/ MICHAEL E WHEAT

10

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE