FILED

09/08/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0127

DA 19-0127

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 225

AWIN REAL ESTATE, LLC, and TRIPLE EEEZ RANCH, INC.,

Plaintiffs and Appellants,

v.

WHITEHEAD HOMES, INC.,

Defendant, Appellee, and Cross-Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-14-1306(A)
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Thane Johnson, Johnson, Berg & Saxby, PLLP, Kalispell, Montana

For Appellee:

Clifton W. Hayden, Law Offices of Clifton W. Hayden, Whitefish, Montana

Submitted on Briefs: June 24, 2020

Decided: September 8, 2020

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      AWIN Real Estate, LLC ("AWIN") sued Whitehead Homes, Inc., ("WHI") in the Eleventh Judicial District Court, Flathead County, for breach of an October 2009 investment agreement (the "Investment Agreement") between the parties. The parties cross-appeal the District Court's judgment in favor of AWIN on its breach of contract claim against WHI and in favor of WHI on an unpled claim that AWIN breached the parties' Second Amended Operating Agreement of AWIN Real Estate, LLC ("Operating Agreement"). We hold that the District Court correctly resolved AWIN's claim for breach of the Investment Agreement but that it lacked record evidence to award WHI $55,000 in damages for AWIN's breach of the Operating Agreement. We affirm in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2      Plaintiff AWIN was a Montana limited liability company organized for the purpose of operating a real estate brokerage firm under the trade name Windermere Real Estate. It formerly had an address of 713 East 13th Street, Whitefish, Montana 59937 (the "713 Building"). Initially, AWIN's sole member was Plaintiff Triple EEEZ Ranch, Inc. ("EEEZ"). EEEZ is a Montana corporation whose sole shareholder, director, and president is Peter Elespuru. Richard Thomas became a member of AWIN in September 2005.

¶3      Defendant WHI is a Montana corporation. David Whitehead ("Whitehead") is a shareholder and president of the corporation. On October 19, 2007, WHI and AWIN entered into the Investment Agreement, which provides in pertinent part:

2

AWIN R.E. agrees that WHITEHEAD may invest up to THIRTY-THREE AND 33/00 Percent (33.33%) ownership in the company. The parties agree that the value of AWIN R.E. shall be determined by the value of the building located at 713 E. 13th Street, Whitefish, MT 59937 and the business of Windermere Real Estate in Whitefish, MT. The current value of AWIN R.E. is agreed to be $500,000.00. Whitehead's investment will be paid in three equal installments as set forth below for a total investment purchase price of ONE HUNDRED AND SIXTY-SEVEN THOUSAND DOLLARS AND 00/100 ($167,000)[.]

¶4 The Investment Agreement instructed Whitehead to make the three installment payments as follows:

First Installment: On or before June 15th, 2007, WHITEHEAD paid Triple EEEZ Ranch the sum of FIFTY-SIX THOUSAND AND 00/100 DOLLARS ($56,000).

Second Installment: On or before January 5th, 2008, WHITEHEAD shall pay Triple EEEZ Ranch the sum of FIFTY-SIX THOUSAND AND 00/100 DOLLARS ($56,000).

Third Installment: On or before January 5th, 2009, WHITEHEAD shall pay Triple EEEZ Ranch the sum[] of FIFTY-SIX [sic] THOUSAND AND 00/100 DOLLARS ($55,000).

The Investment Agreement further provided that, in return for the three installment payments, Whitehead "shall receive a 33.33% interest in AWIN R.E. and the right to purchase a 33.33% interest in that real property and improvements located at 713 E. 13th Street, Whitefish, MT 59937[.]"

¶5 Whitehead made his first installment payment on June 15, 2007, prior to execution of the Investment Agreement. He made his second installment payment by January 5, 2008. Whitehead refused to make the third installment payment of $55,000, which was due on or before January 5, 2009.

3

¶6 In September 2014, AWIN, WHI, and Thomas entered into a contract to sell the 713 Building—which the three of them had purchased under a separate agreement in 2008—with a closing date set for December. They agreed to split the proceeds from the sale as follows: Thomas—35.0147%; WHI—31.8712%; AWIN—33.1141%.

¶7 On December 19, 2014, AWIN sued WHI in the District Court for breach of contract and unjust enrichment[1] for failure to make the third installment payment under the Investment Agreement. On the same date, AWIN obtained a prejudgment writ of attachment against WHI and executed upon the writ, taking WHI's share of the proceeds from the sale of the 713 Building—$47,640.25—based upon Whitehead's failure to make the third installment payment pursuant to the Investment Agreement. WHI answered AWIN's complaint on March 27, 2015, counterclaiming that by taking its share of the proceeds from the sale of the 713 Building, AWIN was liable for breaching the separate contract between AWIN, WHI, and Thomas regarding the distribution of net proceeds and closing instructions for the sale of the 713 Building.[2] The court later dissolved the writ because AWIN had not given Whitehead notice of its intent to obtain such an attachment; failed to post notice of its intention on the property; failed to conduct hearings required in the absence of notice; and failed to post the required bonds, in violation of Title 27, chapter 18 of the Montana Code Annotated. WHI recovered its net proceeds from the sale of the building in October 2015.

---

[1] AWIN withdrew the claim for unjust enrichment on the first day of trial.

[2] WHI also asserted counterclaims for negligence per se, conversion, and wrongful attachment based on the same conduct.

4

¶8 The District Court conducted a two-day bench trial on January 16 and March 19, 2018. Elespuru, Thomas, and Whitehead each testified. On September 5, the court issued its Findings of Fact, Conclusions of Law and Order. It found the language of the Investment Agreement ambiguous and held that the mutual intention of the parties at the time of contracting was for WHI to become an equal owner of AWIN by making three installment payments. The court concluded that Whitehead's failure to pay the third installment constituted breach of the Investment Agreement. The court awarded AWIN $55,000 in damages, plus prejudgment interest from the date the payment was due.

¶9 The District Court also concluded that AWIN breached the Operating Agreement by withholding from Whitehead access to various financial records and information. On this claim, the court awarded WHI $55,000 in damages, plus prejudgment interest on its share of the net proceeds from the sale of the 713 Building until the time the proceeds were recovered.

¶10 After further briefing on the issue of attorney's fees, the court issued an Order Nunc Pro Tunc on February 14, 2019, entering judgment in favor of AWIN in the amount of $136,867.92, reflecting AWIN's $55,000 damages award, prejudgment interest, and attorney fees and costs, and entering judgment in favor of WHI in the amount of $97,094.14, reflecting WHI's $55,000 damages award, prejudgment interest on the recovered sale proceeds, and attorney fees and costs. Both parties appeal.

**STANDARDS OF REVIEW**

¶11 The construction or interpretation of a contract is a question of law. *Watters v. City of Billings*, 2019 MT 255, ¶ 11, 397 Mont. 428, 451 P.3d 60 (citations omitted). We

5

review a district court's conclusions of law for correctness. *Kuhr v. City of Billings*, 2007 MT 201, ¶ 13, 338 Mont. 402, 168 P.3d 615 (citation omitted). A district court's determination of damages is a factual finding that we review for clear error. *Watson v. West*, 2009 MT 342, ¶ 18, 353 Mont. 120, 218 P.3d 1227 (citation omitted). Findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if review of the record leaves this Court with the definite and firm conviction that a mistake has been made. *Kuhr*, ¶ 13 (citation omitted); *see also Denton v. First Interstate Bank of Commerce*, 2006 MT 193, ¶ 18, 333 Mont. 169, 142 P.3d 797.

**DISCUSSION**

¶12    *1. Whether the District Court correctly interpreted the Investment Agreement to hold WHI in breach?*

¶13    Whether an ambiguity exists in a contract is a question of law. *Watters*, ¶ 11 (citing *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851). An ambiguity exists if contract language is susceptible to at least two reasonable but conflicting meanings. *Mary J. Baker Revocable Trust*, ¶ 20 (citations omitted); *Ophus v. Fritz*, 2000 MT 251, ¶ 23, 301 Mont. 447, 11 P.3d 1192 (citations omitted). If the language in a contract is ambiguous, the court must determine as a matter of fact the parties' intent in entering into the contract. *Mary J. Baker Revocable Trust*, ¶ 19 (citations omitted). The court must interpret the contract to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as it is ascertainable and lawful. *Mary J. Baker Revocable Trust*, ¶ 21 (citing § 28-3-301, MCA).

6

It ascertains the mutual intention of the parties from the writing, if possible. *Mary J. Baker Revocable Trust*, ¶ 21 (citing § 28-3-303, MCA). In that undertaking, the court may consider evidence of the circumstances under which the contract was made and the matter to which it relates. *Mary J. Baker Revocable Trust*, ¶ 21 (citing § 28-3-402, MCA). A reviewing court generally construes ambiguities in a contract against the drafter. *Mary J. Baker Revocable Trust*, ¶ 33; *Ophus*, ¶ 31 (citations omitted).

¶14 The District Court determined—and the parties do not dispute—that the Investment Agreement contains ambiguous language because it provides that Whitehead "*may* invest up to" one-third ownership interest in AWIN, but also that his investment "*will be paid* in three equal installments" and that he "*shall* pay" those installments on specified dates. (Emphases added.) In other words, the language creates an ambiguity concerning the mandatory nature of Whitehead's installment payments. "Considering all the circumstances surrounding the parties entering into the Investment Agreement," the court resolved the ambiguity in favor of AWIN, concluding that AWIN and WHI mutually intended that Whitehead would become an equal one-third owner of AWIN by making three agreed-upon installment payments.

¶15 We conclude from a review of the record that the District Court correctly ascertained the parties' mutual intent. Elespuru testified at trial that the parties intended to transfer a third of the interest in AWIN to Whitehead "[i]mmediately" upon execution of the Investment Agreement and that this was reflected in the contemporaneously executed Operating Agreement, which provided that AWIN, Thomas, and WHI each possessed one-third of AWIN. When asked whether he understood the Investment Agreement to

7

allow Whitehead "discretion to invest on a sliding scale[,]" Elespuru answered, "Absolutely not. I would not have accepted that." WHI asserts that Whitehead's testimony demonstrates his understanding that the Investment Agreement's language—that he "may invest up to THIRTY-THREE AND 33/00 Percent (33.33%) ownership"—meant he "could buy up to 33 percent of the company, and if [he] made all the payments [he would] have the full 33 percent." WHI thus contends that the District Court erred in discerning the parties' intent. But the court did not rely solely on Elespuru's testimony to resolve the Investment Agreement's ambiguous language. It also considered the Operating Agreement, which reflected that AWIN, WHI, and Thomas had equal interest in the ownership of AWIN as of the date of both contracts; a franchise agreement that the parties signed in 2008, also reflecting that each party had a 33.33% interest; tax returns and K-1 forms for AWIN from 2007 and 2009 apportioning 33.33% of AWIN's gains and losses to Whitehead; and the fact that AWIN, Thomas, and WHI each netted approximately one-third of the proceeds from the sale of the 713 Building.

¶16 Nonetheless, WHI contends that because AWIN drafted the Investment Agreement, any ambiguity it contains must be construed against AWIN. WHI contends that the ambiguity at issue—whether the Investment Agreement required or merely provided the option for Whitehead to make three installment payments—must therefore be interpreted to mean that Whitehead was not obligated to make all three installment payments, but rather allowed to if he so chose.

¶17 The principle that courts will construe contract ambiguities against the drafter is not an absolute rule. Section 28-3-206, MCA, provides: "In cases of uncertainty *not removed*

8

*by parts 1 through 5 of this chapter*, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." (Emphasis added.) Title 28, ch. 3, MCA, sets forth myriad rules of interpretation, several of which are noted above, used to determine a contract's meaning. Courts may, for example, examine extrinsic evidence to determine the intent of the parties. *See, e.g., Ophus*, ¶ 29 (citation omitted). And, as WHI itself points out, courts must follow the general rule that "[a] contract must be given a reasonable interpretation." *Mont. Health Network, Inc. v. Great Falls Orthopedic Assocs.*, 2015 MT 186, ¶ 20, 379 Mont. 513, 353 P.3d 483 (citing § 28-3-201, MCA). The District Court's interpretation of the ambiguous language in the Installment Agreement was reasonable in light of all the circumstances surrounding the parties at the time of contracting and finds support in the conduct evidencing their intent. *See* § 28-3-402, MCA.

¶18    *2. Whether the District Court erred in awarding damages to WHI for AWIN's breach of the Operating Agreement?*

¶19    The District Court concluded that by failing to provide WHI access to certain financial information, AWIN breached the Operating Agreement, thus entitling WHI to $55,000 in damages. On appeal, AWIN argues that the District Court lacked sufficient evidence to support its award of damages to WHI.

¶20    Damages for breach of contract serve to compensate an aggrieved party for the loss sustained. *See, e.g., Arcadia Fin., Ltd. v. Prestige Toyota*, 1999 MT 273, ¶ 23, 296 Mont. 494, 989 P.2d 831 (citing § 27-1-311, MCA). The nonbreaching party should receive a sum that will put it in as good a position as if the contract had been performed.

*Watson*, ¶ 34 (citing *Cut Bank School Dist. No. 15 v. Rummel*, 2002 MT 248, ¶ 8, 312 Mont. 143, 58 P.3d 159). In all cases, damages must be reasonable. Section 27-1-302, MCA. Though damages need not be determined with "mathematical precision," there must be sufficient evidence to "afford a reasonable basis for determining the specific amount awarded." *Hallenberg v. General Mills Operations, Inc.*, 2006 MT 191, ¶ 32, 333 Mont. 143, 141 P.3d 1216 (citation omitted). A party to an action for breach of contract may not recover damages that "are not clearly ascertainable in both their nature and origin[.]" Section 27-1-311, MCA.

¶21 Our review of the record reveals no support for the District Court's finding that AWIN's breach of the Operating Agreement offset WHI's breach of the Investment Agreement to the tune of $55,000. First, neither agreement contemplates such a remedy. The Investment Agreement provides that, in the event of a dispute "between the parties regarding the interpretation or enforcement of this Agreement, the prevailing party in said legal action is entitled to recover attorney fees and costs." The Operating Agreement provides that, in the event of an action to enforce its terms, "the prevailing party shall be entitled to recover all costs in asserting or defending said proceedings, including reasonable attorney's fees and court costs against any party resisting enforceability." This provision does not cross-reference the Investment Agreement, and neither agreement includes a liquidated damages provision. More to the point, as AWIN points out, WHI never asserted losses approaching $55,000, either in its counterclaims or in its pretrial order contentions. *See Baston v. Baston*, 2010 MT 207, ¶¶ 18-21, 357 Mont. 470, 240 P.3d 643

(setting aside a *sua sponte* award of damages where party did not seek damages in pleadings or pretrial order).

¶22     WHI's Pretrial Order contentions did not include a claim for damages based on breach of the Operating Agreement. WHI contended that AWIN failed to provide required access to financial information. WHI contended additionally that it had been damaged by AWIN's breach of the Investment Agreement in the amount of $15,608. WHI's contentions do not specify the basis for its claimed damages, and it made no claim for any alleged breach of the Operating Agreement. The District Court did not find as a matter of fact or conclude as a matter of law that AWIN breached the Investment Agreement. The court instead concluded that WHI was entitled to damages for breach of the Operating Agreement. But WHI offered no evidence to establish how AWIN's alleged failure to produce financial records resulted in a monetary loss to WHI, much less evidence that could support an award of $55,000. Nor did WHI offer any evidence substantiating its asserted damages figure of $15,608. WHI's argument that the District Court made an award of damages in equity is unsupported in the record or by law. The case was presented as a breach of contract action, and the District Court purported to award contract damages. Its damages award in WHI's favor finds no support in the pleadings or in the evidence.[3]

¶23     On the other hand, the Pretrial Order put the parties on notice of WHI's contention that AWIN had denied it access to requested financial information. To the extent the evidence supported a finding that AWIN failed to abide by the Operating Agreement's

---

[3] AWIN does not challenge the District Court's award of prejudgment interest on the recovered building sale proceeds, and we do not disturb it.

11

requirements, the District Court was within its discretion to award WHI attorney's fees for prevailing on that argument. The Operating Agreement expressly provides for attorney's fees against the party "resisting [the agreement's] enforceability." AWIN argues that WHI's attorney's fees must be limited to its lone identifiable claim to the financial records, a claim AWIN contends was not raised or addressed until the second day of trial. Because we reverse the award of damages to WHI, we remand for the District Court to consider the parties' arguments on WHI's fees in light of this Opinion.

## CONCLUSION

¶24 We affirm the District Court's determination that WHI breached the Investment Agreement, reverse its award of $55,000 in damages to WHI for AWIN's alleged breach of the Operating Agreement, and remand for further proceedings on attorney's fees consistent with this Opinion.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR