FILED

07/20/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0451

DA 20-0451

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 180

MARY-ANN YOUNG and AUTUMN ROSE
a/k/a AUTUMN YOUNG,

      Plaintiffs and Appellants,

   v.

HAMMER, HEWITT, JACOBS & FLOCH, PLLC;
HAMMER, QUINN & SHAW, PLLC;
and JOHN DOES 1-10,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV 17-501(D)
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Lee C. Henning, Rebecca Henning-Rutz, Ashley C. McCormack, Henning,
Rutz & McCormack, P.L.L.C., Kalispell, Montana

      For Appellees:

            Mikel L. Moore, Eric Brooks, Moore, Cockrell, Goicoechea & Johnson,
P.C., Kalispell, Montana

Submitted on Briefs:  June 9, 2021

Decided:  July 20, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     This is a legal malpractice case for failure to file a timely claim with an insurer brought by Mary-Ann Young and her daughter Autumn Rose (the "Plaintiffs") against their former attorney's law firm Hammer, Hewitt, Jacobs & Floch, PLLC, now known as Hammer, Quinn & Shaw, PLLC (HHJF).  The Eleventh Judicial District Court, Flathead County, granted summary judgment to HHJF after concluding there was no insurance coverage in the underlying tort case and dismissed Plaintiffs' complaint with prejudice. Plaintiffs appeal from three orders of the District Court: (1) the May 22, 2020 Order and Rationale on Plaintiffs' Motion for Partial Summary Judgment; (2) the May 26, 2020 Order and Rationale on Defendant's Renewed Motion for Summary Judgment; and (3) the August 20, 2020 Order Denying Plaintiffs' Rule 60(b) Motion for Relief from Judgment. We restate the dispositive issues we address on appeal as follows:[1]

> *1.  Did the District Court err in denying Plaintiffs' motion for partial summary judgment on the issue whether the endorsement deleted the watercraft exclusion from the insurance policy?*
>
> *2.  Did the District Court err in granting summary judgment to HHJF on the issue of whether there was coverage under the insurance policy for the boating accident and dismissing the legal malpractice claims?*
>
> *3.  Did the District Court abuse its discretion in denying Plaintiff's Rule 60(b) motion?*

---

[1] The Plaintiffs also ask this court to revive their motion to compel Wurth's insurer Travelers Insurance Company to release its claim file, which the District Court denied as moot after granting summary judgment to HHJF and dismissing Plaintiffs' complaint.  As this issue is not properly before this Court on appeal and we affirm the District Court's order rendering the motion moot, we do not address this issue further.

¶2      We affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

¶3      Rod Wurth purchased and titled an 18-foot 1984 West Coaster Bayrunner motorboat in his name in 1994. At that time, the boat was equipped with a 1983 Evinrude 60-horsepower outboard motor. Rod Wurth died on March 12, 2005. The boat was not re-titled following his death. His son, Tim Wurth (Wurth), came into possession of the boat at some point before 2007.

¶4      On July 12, 2007, the Plaintiffs were passengers in the boat and Wurth was the driver. The boat encountered a wave, and Wurth and Young were thrown from the boat. The propeller from the outboard motor struck Young several times and she was severely and permanently injured. Rose, who was a child at the time, witnessed her mother's injuries and also suffered compensable injuries as a result of the boating accident. It is undisputed that the boat was outfitted with an 85-horsepower Evinrude outboard motor at the time of the accident that was not the same outboard motor attached to the boat when Rod Wurth purchased and titled the boat in 1994.

¶5      The Plaintiffs hired HHJF to recover damages arising out of the boating accident. In December 2007, Wurth sent HHJF a letter, informing the firm he would be in federal prison for two years on unrelated money laundering charges; he owed the federal government more than $50,000; his mother owned the home he lived in and the homeowners insurance policy was in her name; the boat involved in the accident belonged to his deceased father; and his only personal assets were an old boat with no motor and a

3

1993 Toyota 4 Runner with no insurance policy. On June 11, 2008, HHJF secured a default judgment for the Plaintiffs against Wurth for $1,300,853.11. HHJF was unable to collect upon the judgment against Wurth and HHJF terminated its representation of the Plaintiffs in November 2008.

¶6     Some years later, the Plaintiffs hired new counsel, Evan Danno, to collect on the judgment. Danno discovered Wurth's mother, Carolyn Jenson, had a homeowners insurance policy (the "Policy") through Travelers Insurance Company with a $500,000 policy limit. The Policy was in effect on July 12, 2007, and provided coverage for certain liabilities incurred by resident relatives. Wurth resided in his mother's home on the date of the boating accident and as a resident relative qualified as an insured. The Policy excluded coverage for bodily injury or property damage "[a]rising out of . . . [t]he ownership, maintenance, use, loading or unloading of watercraft . . . [p]owered by one or more outboard motors with more than 25 total horsepower if the outboard motor is owned by any insured."[2] HHJF did not discover the Policy and did not notify Travelers of the boating accident or the claims by the Plaintiffs against Wurth arising from the boating accident.

---

[2] The Policy provided coverage for outboard motors with more than 25 total horsepower only if (1) the motor was owned by an insured prior to the policy period and the motor was declared at the inception of the Policy or within 45 days of acquiring the motor; or (2) the motor was acquired during the policy period. There is no dispute the motor on the boat at the time of the accident was acquired prior to the inception of the policy period and was not declared either at the policy inception or within 45 days of the acquisition of the motor.

4

¶7     Danno successfully negotiated a $100,000 settlement with Travelers despite its coverage defenses, including the lack of timely notice of the claim.  Dan Spoon, who represented Travelers in negotiations with the Plaintiffs in May 2017, attested Travelers settled with the Plaintiffs "to avoid the substantial cost of litigating the matter.  The settlement was essentially a 'cost of litigation' settlement in the amount of $100,000."  As part of the settlement, Plaintiffs released all claims against Wurth, his mother, and Travelers, including insurance claims and bad faith claims, but reserved the right to pursue a legal malpractice claim against HHJF.

¶8     The Plaintiffs filed this legal malpractice suit against HHJF on June 7, 2017, for its failure to discover and make a claim against the Policy, alleging the Plaintiffs would have recovered the $500,000 policy limits had HHJF made a timely claim.  HHJF filed its first motion for summary judgment in November 2018, arguing there were no viable claims for Plaintiffs to recover against the Policy as the Policy excluded coverage for injuries caused by the boat at issue in this case. In support of its motion for summary judgment, HHJF provided an affidavit from Wurth, in which he attested he purchased the 85-horsepower Evinrude outboard motor on eBay and attached it to the boat before the accident.  HHJF submitted no additional evidence that corroborated Wurth's testimony about his ownership of the motor.  The Plaintiffs submitted evidence of Wurth's convictions for money laundering and an affidavit from Greg Postell, a former friend of Wurth and Young's stepbrother.  Postell attested he was familiar with the boat and the attached outboard motor as he had gone on many trips with the boat and "the 85 horsepower Evinrude motor with a

5

white casing with 'Evinrude' on the side was always the motor that was on that boat." The District Court reasoned that the Plaintiffs could use evidence of Wurth's conviction under M. R. Evid. 608(b) in cross-examination to demonstrate Wurth's lack of character for truthfulness and this may be sufficient to overcome the presumption Wurth was telling the truth about his ownership of the 85-horsepower Evinrude outboard motor. As all reasonable inferences that may be drawn from the offered proof must be resolved in favor of the party opposing summary judgment, the District Court concluded there was a genuine issue of material fact regarding the ownership of the outboard motor and denied the motion on April 23, 2019.

¶9 In January 2020, the Plaintiffs moved for partial summary judgment on the issue whether the "Value Added Package-Plus" endorsement to the Policy eliminated the watercraft exclusion from the Policy. On May 22, 2020, the District Court denied the motion, concluding the Plaintiffs' interpretation of the language of the endorsement was flawed and nothing in the endorsement's language eliminated the watercraft exclusion.

¶10 HHJF renewed its motion for summary judgment on February 18, 2020. HHJF included additional evidence with its renewed motion. The newly submitted evidence included records obtained from eBay showing Wurth won an online auction for a 1978 Evinrude 85-horsepower outboard motor on June 7, 2007. The records show the "checkout status" as "incomplete." Wurth submitted an additional affidavit attesting after winning the auction, he completed the purchase of the motor outside of eBay's internal payment system to avoid paying eBay transaction costs and had the motor installed on the boat

6

before the July 12, 2007 accident. HHJF also submitted the deposition of Postell, along with two photographs Postell provided at the deposition that he had taken of Wurth's boat with his flip phone. At the deposition, Postell explained the photographs were taken in either 2006 or 2007 and show the boat involved in the July 12, 2007 accident. He explained the photographs depicted the boat before the accident, because he and Wurth did not hang out much after the accident. Wurth attested the photographs provided by Postell were taken during a boating and camping trip around Labor Day 2006 and show the boat with the 1983 Evinrude 60-horsepower motor. HHJF also submitted a report from an expert witness, Captain Ben Sheaffer, in which he opined the outboard motor mounted on the boat at the time of the accident was a 1978 Evinrude 85-horsepower outboard motor based on his review of photographs taken by Fish, Wildlife, and Parks during its investigation of the accident. Captain Sheaffer also opined the motor in the photographs from Postell's flip phone was not a 1978 Evinrude 85-horsepower outboard motor, but rather a 50- or 60-horsepower Evinrude outboard motor from the early-to-mid-1980s. He opined the resolution of the photographs was too low to determine the exact year. He provided commercial brochures depicting the motors and their distinct decals.

¶11 In response, the Plaintiffs submitted a third affidavit from Postell reiterating "the 85 horsepower Evinrude motor with a white casing with 'Evinrude' on the side was always the motor that was on the boat when Mr. Wurth had possession of the boat" and explaining "[t]he colors in the pictures on the boat are not right and it is very difficult to see any detail. The photos do not accurately represent what Tim's boat (including the motor on the boat)

7

looked like at the time I took the pictures." In support of an alternate position that the case should survive summary judgment because actual coverage under the Policy was irrelevant, the Plaintiffs submitted affidavits from an insurance expert and several attorneys opining Travelers would have paid policy limits had HHJF submitted the claim in 2007 or 2008 because the motor-ownership issue would not have come to the insurer's attention; the insured's liability was clear; the damages were catastrophic; Wurth was an unsavory defendant; and the insurance company would have been worried about the risk of excess exposure.

¶12    The District Court determined there was no issue of material fact whether Wurth owned the outboard motor and the Plaintiffs' alternate argument was speculative and could not survive summary judgment. The court granted summary judgment to HHJF on May 26, 2020, and dismissed Plaintiffs' complaint. Plaintiffs sought relief from judgment under M. R. Civ. P. 60(b), which the District Court denied on August 20, 2020. This appeal followed. Additional facts will be discussed below as necessary.

**STANDARDS OF REVIEW**

¶13    We review a district court's ruling on a motion for summary judgment de novo, applying the criteria of M. R. Civ. P. 56. *Labair v. Carey*, 2012 MT 312, ¶ 15, 367 Mont. 453, 291 P.3d 1160 (*Labair I*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." M. R. Civ. P. 56(c)(3). The party seeking summary judgment has the burden of

establishing a complete absence of any genuine issues of material fact. *Sullivan v. Cont'l Constr. of Mont., LLC*, 2013 MT 106, ¶ 14, 370 Mont. 8, 299 P.3d 832. Once the moving party has met its burden, the opposing party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. *Sullivan*, ¶ 14.

¶14 A court's denial of relief pursuant to M. R. Civ. P. 60(b) is reviewed for an abuse of discretion. *Essex Ins. Co. v. Moose's Saloon, Inc.*, 2007 MT 202, ¶ 16, 338 Mont. 423, 166 P.3d 451.

## DISCUSSION

¶15 *1. Did the District Court err in denying Plaintiffs' motion for partial summary judgment on the issue whether the endorsement deleted the watercraft exclusion from the insurance policy?*

¶16 The Plaintiffs argue the District Court erred in denying their motion for partial summary judgment because the plain language of the "Value Added Package-Plus" endorsement deleted the entirety of Section II, including the watercraft exclusion listed in the Policy. They argue alternatively, to the extent there is any ambiguity in the endorsement's language, any ambiguities and exclusionary language must be strictly construed against the insurer.

¶17 Jenson paid an additional premium for the "Value Added Package-Plus" endorsement. This endorsement made changes to various parts of the Policy. The changes are organized under headings and subheadings that match the headings and subheadings listed in the Policy itself. The endorsement contains the heading "Section II – Liability

9

Coverages," which matches a heading in the Policy. This is immediately followed by the heading "Coverage E – Personal Liability," which is also the first subheading listed under "Section II – Liability Coverages" in the Policy. After the subheading, it states: "This section is deleted and replaced by the following." The endorsement continues with additional headings that appear in Section II of the Policy: "Section II – Exclusions" and "Section II – Conditions." The endorsement states language "is added" to the policy provisions under each of these headings. For example, the Policy contains three exceptions (including the watercraft exception), enumerated one through three under the heading "Section II – Exclusions." After the heading "Section II – Exclusions" in the endorsement, the endorsement states: "The following is added" and lists an exclusion enumerated with a four.

¶18    "A contract must be given a reasonable interpretation." *Mont. Health Network, Inc. v. Great Falls Orthopedic Assocs.*, 2015 MT 186, ¶ 20, 379 Mont. 513, 353 P.3d 483 (citing § 28-3-201, MCA)); *see also* § 1-3-233, MCA ("Interpretation must be reasonable."). "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect if it can be done without violating the intention of the parties." Section 28-3-201, MCA. "The language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity." Section 28-3-401, MCA. An insurance policy must be read as a whole and the policy's various parts reconciled to give each part meaning and effect. *Kilby Butte Colony, Inc. v. State Farm Mut. Auto Ins. Co.*, 2017 MT 246, ¶ 10, 389 Mont. 48, 403 P.3d 664.

Disagreements as to the interpretation of a written instrument do not automatically create an ambiguity. *Richards v. JTL Grp., Inc.*, 2009 MT 173, ¶ 26, 350 Mont. 516, 212 P.3d 264. "[A]n ambiguity exists when a contract is subject to two different interpretations, but the different interpretations must be reasonable." *Richards*, ¶ 28 (citation omitted).

¶19 The Plaintiffs' argument that the language after the subheading "Coverage E – Personal Liability" deletes the entirety of Section II, including the watercraft exclusion, is not a reasonable reading of the endorsement. Such a reading ignores the organization of the endorsement and the Policy itself, with separate provisions organized under separate headings and subheadings. Additionally, such a reading of the Policy would remove entire categories of coverage listed under Section II, such as "Coverage F – Medical Payments to Others," as well as all coverages included in the Policy under "Additional Coverages," leaving the insured with less coverage, not more, for the additional premium paid to acquire the "Value Added Package-Plus" endorsement. As the District Court explained, such an interpretation renders the Policy and endorsement illusory, against public policy, absurd, and in violation of the reasonable expectations doctrine. Finally, if the entirety of Section II is deleted as Plaintiffs argue, the additional provisions of the endorsement listed under "Section II – Exclusions" and "Section II – Conditions" have nothing to "add" to and no reason to enumerate the "added" exception under "Section II – Exclusions" with the number four. When read in the context of the whole policy, "Section II – Exclusions" in the endorsement adds a fourth exclusion to the existing list of exclusions in "Section II – Exclusions" of the Policy. The District Court correctly concluded the Plaintiffs' reading

11

of the endorsement was not reasonable and did not comport with the language of the endorsement itself. There is no ambiguity in the language of the endorsement to be construed against the insurer. The "Value Added Package-Plus" endorsement did not delete the entirety of Section II or the watercraft exception.

¶20 *2. Did the District Court err in granting summary judgment to HHJF on the issue of whether there was coverage under the insurance policy for the boating accident and dismissing the legal malpractice claims?*

¶21 The District Court concluded the Plaintiffs' theory for recovery on the legal malpractice case against HHJF depended on the existence of coverage under the Policy for the Plaintiffs' injuries from the boating accident, because it was HHJF's failure to discover the Policy and make a claim for damages under it that allegedly injured the Plaintiffs. If Wurth owned the outboard motor, the Policy's watercraft exclusion precluded any coverage under the Policy for the Plaintiffs' injuries. The District Court concluded there was no issue of material fact regarding the ownership of the outboard motor. The District Court explained it had denied the first motion for summary judgment as HHJF had relied entirely on Wurth's testimony regarding the ownership of the motor and provided no corroborating evidence. The Plaintiffs had submitted admissible evidence that called Wurth's character for truthfulness into question. With the renewed motion, HHJF submitted independent admissible evidence to corroborate each material aspect of Wurth's testimony. The District Court concluded ownership of the outboard motor no longer rested solely on Wurth's credibility. Further, the court concluded Postell's affidavits failed to raise a genuine issue of fact whether Wurth owned the motor on the date of the accident,

12

as his deposition and affidavits were equivocal and contradictory about the contents of the photographs from his flip phone and equivocal, contradictory, and non-specific about the ownership of the motor. The District Court also dismissed the Plaintiffs' alternate argument that actual coverage under the Policy was irrelevant because Travelers would have paid policy limits had the claim been presented in 2007 or 2008 regardless of coverage. The court first concluded the Plaintiffs had failed to plead this alternate theory in their complaint. The court also rejected the theory on its merits, explaining to survive summary judgment on a legal malpractice claim for the lost ability to negotiate settlement of an underlying claim, the plaintiff must demonstrate the underlying claim was meritorious and not rely on mere speculation or supposition.

¶22 The Plaintiffs argue the District Court erred in concluding there was no issue of material fact regarding the ownership of the outboard motor. The Plaintiffs argue the documentation from eBay was inconclusive and the court could have inferred Rod Wurth replaced the motor during the eleven years he owned and possessed the boat. Further, they argue Postell's affidavits raised material issues of fact whether the photographs he provided accurately depicted the boat and its motor and whether the same motor had always been on the boat while it was in Wurth's possession. They argue HHJF's evidence of boat ownership still relies on Wurth's credibility. Alternately, they argue the District Court erred in concluding their alternate position that ownership of the boat was irrelevant to ability to prove causation and damages was speculative.

13

¶23 The elements of a legal malpractice claim are: (1) the attorney owed the plaintiff a duty of care; (2) the attorney breached this duty by failure to use reasonable care and skill; (3) the plaintiff suffered an injury; and (4) the attorney's conduct was the cause-in-fact of the injury alleged. *See Labair I*, ¶¶ 20, 24. "[A] party's conduct is a cause-in-fact of an event if the event would not have occurred but for that conduct; conversely the defendant's conduct is not a cause of the event, if the event would have occurred without it." *Busta v. Columbus Hosp. Corp.*, 276 Mont. 342, 371, 916 P.2d 122, 139 (1996) (internal quotation omitted). "[A]n attorney's negligence is the cause of the plaintiff's injury if there is an uninterrupted chain of events from the negligent act to the injury." *Labair I*, ¶ 24.

¶24 At issue in this case is whether HHJF's failure to submit a timely claim to Travelers caused injury to the Plaintiffs.[3] Upon review of the record, we agree with the District Court this failure did not cause injury to the Plaintiffs because there was no coverage under the Policy for the Plaintiffs' injuries caused in the boating accident as Wurth owned the outboard motor and the watercraft exclusion precluded coverage. HHJF met its burden to demonstrate there was no material issues of fact regarding the ownership of the outboard motor on its renewed motion for summary judgment, shifting the burden to the Plaintiffs to demonstrate there was a genuine issue of material fact. In response, the Plaintiffs presented equivocal and non-specific affidavits from Postell regarding his familiarity with

---

[3] In its briefing before this Court, HHJF also appears to frame the issue as whether it had a duty to submit a claim to Travelers when there was no coverage under the Policy. As the District Court focused its analysis on causation and injury and HHJF did not cross-appeal, the issue of duty is not properly before this Court and we do not address it.

the boat and its motor and the accuracy of the photographs he took on his flip phone. The Plaintiffs failed to present material and substantial evidence, rather than mere speculative statements, to raise a genuine issue of material fact regarding the ownership of the outboard motor. *See Sullivan*, ¶ 14.

¶25   The Plaintiffs argue the District Court, nonetheless, erred in granting HHJF summary judgment because the ownership of the outboard motor and whether there was actual coverage under the Policy is irrelevant to their claimed injury. They maintain HHJF's failure to file a claim with Travelers deprived them of the ability to negotiate a settlement with Travelers in 2007 or 2008 when evidence of ownership of the boat may have been weaker[4] and the insurance company would have had fewer defenses to coverage—namely, the lack of timely notice of claim. They posit Travelers would have chosen to settle for policy limits given the clear liability of Wurth for the Plaintiffs' injuries, the catastrophic injuries at issue, Wurth's unsavoriness, and the risk of excess exposure.

¶26   In *Labair I* and *Labair v. Carey*, 2016 MT 272, 385 Mont. 233, 383 P.3d 226 (*Labair II*), this Court recognized the loss of the ability to negotiate a settlement was a cognizable injury in a legal malpractice case. We explained to determine whether an attorney caused damages, the court "must first precisely define the injury at issue."

---

[4] The Plaintiffs posit Wurth may have been an uncooperative defendant as he began serving a two-year sentence in federal prison in 2008. But it is also entirely plausible that evidence of ownership may have been stronger in 2007 and 2008, such as the existence of financial or other records evidencing the purchase of the motor that may have been deleted or lost in the intervening decade.

*Labair I*, ¶ 31. The injury at issue is not the injuries caused by the tortfeasor in the underlying case, but the injuries caused by an attorney's alleged negligence.

¶27 At issue in *Labair I* was an attorney's failure to file a medical malpractice claim within the statute of limitations. In the subsequent legal malpractice claim, the plaintiffs submitted expert medical testimony sufficient to withstand summary judgment on the underlying medical malpractice claim. As the underlying medical malpractice claim would have survived summary judgment had it been filed appropriately, "the missed statute of limitations not only foreclosed the possibility of a successful outcome in the underlying medical malpractice action, it also deprived the [plaintiffs] of any possible recovery through pretrial settlement." *Labair I*, ¶ 31. At trial on remand, the plaintiffs had the burden of showing "they more probably than not would have recovered a jury verdict or settlement against [the underlying tortfeasor] but for [the attorney's] negligence." *Labair I*, ¶ 45.

¶28 Here, the Plaintiffs alleged they were injured by HHJF's failure to discover the Policy and make a claim for damages under it. HHJF has established there was no coverage under the Policy for the Plaintiffs' losses incurred from the boating accident and a claim against the Policy would not have survived a motion for summary judgment in a declaratory judgment action. "[A] claim completely devoid of merit is truly no loss at all." *Labair I*, ¶ 33. While the Plaintiffs argue and submitted affidavits from experts who opined Travelers may have settled for policy limits regardless of actual coverage had HHJF

16

submitted a claim in 2007 or 2008, the District Court correctly concluded such alleged injury was too speculative to survive summary judgment.

¶29    *3. Did the District Court abuse its discretion in denying Plaintiff's Rule 60(b) motion?*

¶30    The Plaintiffs sought relief from judgment under M. R. Civ. P. 60(b)(1) or (6) on the grounds the District Court dismissed their complaint, not on the merits, but based on its sua sponte rationale that Plaintiffs failed to amend their complaint to include their alternate argument that the actual ownership of the motor is irrelevant because the insurance company would have paid policy limits regardless of actual coverage under the Policy.

¶31    While the District Court first reasoned the Plaintiffs' alternate argument was not properly pleaded, it went on to reject the argument on its merits, explaining: "Nonetheless, the Plaintiffs' newly raised theory of causation/damages lacks merit." The District Court then proceeded to thoroughly analyze and reject the alternate theory of the case on the merits.[5]  The District Court did not abuse its discretion in denying the Plaintiffs' motion for relief from judgment under M. R. Civ. P. 60(b).

**CONCLUSION**

¶32    The District Court is affirmed.

/S/ INGRID GUSTAFSON

---

[5] We address the merits under issue 2.

17

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE